RAY WAYNE MCGILL *v.* STATE OF ARKANSAS

5807                                                     490 S.W. 2d 449

Opinion delivered February 19, 1973

*William C. McArthur,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by *Gene O'Daniel,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. The appellant, Roy Wayne McGill, was tried before a jury in the Pulaski County Circuit Court on four counts of forgery and four counts of uttering. At the close of the state's case a verdict of acquittal was directed on the appellant's motion as to the four counts of forgery, but his motion was denied as to the four counts of uttering. The jury found him guilty on the four counts of uttering and he was sentenced to three years in the penitentiary on each count.

On appeal to this court the appellant first contends that the trial court erred in allowing the state to introduce handwriting exemplars taken from him without cause and without advising him of his constitutional rights. He next contends that the trial court erred in failing to grant a mistrial because of remarks made by the prosecuting attorney pertaining to the dismissal of the forgery counts. He also contends that the trial court erred in denying his motion for a directed verdict as to count Nos. 4 and 6 of the information because the evidence was insufficient to sustain the charges.

The background facts and evidence appear as follows: Mr. and Mrs. George Inman owned and operated a household moving company under the name "Little Movers" in North Little Rock, and used printed check forms on the Twin City Bank in connection with their business. Upon being advised that their bank account was overdrawn, they learned that four printed check forms had been taken from the back of their checkbook. The checks had been signed with the name "Claude Ingram" as maker and were made out to "James E. Waddle" as payee. They were all endorsed with the name "James E. Waddle" and were separately uttered at Gibson's Discount Store, the Magic Mart, Don's Model Market and a Weingarten grocery store.

Both Mr. and Mrs. Inman identified the checks as their company forms written on their company account, they denied that they issued the checks or that they were acquainted with a Claude Ingram or a James E. Waddle. They testified that they had never met the appellant. Both Mr. and Mrs. Inman testified that none of the writing on the checks involved was their writing.

Mr. Edward Jackson testified that he was the assistant manager of Magic Mart and that the check, state's exhibit No. 4, was given to Magic Mart to be deposited in the store's account. He testified that as a general requirement the clerks who take checks require that the check be endorsed in their presence and are required to compare the endorsement on the check with the signature on the endorser's state driver's license. This check bore the state driver's license No. 0723-9360 beneath the endorsement "James E. Waddle."

Jean Davenport testified that she is employed as "booth operator" at Weingarten's; she identified state's exhibit No. 1 as a check she cashed on January 14, 1971, made out to James E. Waddle for $132.50. She positively identified the appellant in open court as the man for whom she cashed the check and testified that he endorsed the check as James E. Waddle in her presence.

Sandra Maddox testified that in January, 1971, she was working at Gibson's in North Little Rock and that her principal duty was to report to the information desk and cash checks. She testified that she cashed the check which is state's exhibit No. 3 in January and wrote a driver's license number on the back of it. She testified that the check was for $132.50 and she identified the appellant in open court as the person for whom she cashed the check. This check also bore the state driver's license No. 0723-9360 beneath the endorsement "James E. Waddle."

Mr. Bob Bonner testified that in January, 1971, he was working at Don's Model Market in Sherwood and cashed the check which is state's exhibit No. 2 and that it is a policy of the market to have the person who

cashes the check to endorse it on the back. He testified that the endorsement on the back of state's exhibit No. 2 is "James E. Waddle."

Mr. J. A. Scharfenberg, a detective in the North Little Rock Police Department, testified that he picked up the four checks involved after he received complaints alleging that the checks were forgeries. He said that Mrs. Inman advised him that a girl whose nickname was "Sam" might have taken the blank check forms from her checkbook. He said he located "Sam" and through her, his investigation led to a Mrs. Boyd. He testified that he was already acquainted with Mrs. Boyd and had talked with her on several occasions. He said that Mrs. Boyd advised him by phone that the appellant and another named individual had cashed the checks. He then went to the state penitentiary where the appellant was serving a sentence on another charge and took handwriting exemplars from the appellant. He said that he explained to the appellant what case he was investigating and advised the appellant that he was a suspect in the case. He said that he then asked the appellant for handwriting exemplars and that the appellant complied without objection. He testified that he did not advise the appellant of his constitutional rights but only told him to write the names "James E. Waddle" and "Claude Ingram."

Mr. Jack Buckley, special agent for the FBI, testified for the state as a handwriting expert. He testified that there was no doubt in his mind whatever, that the handwriting exemplars and the handwriting on the four checks were all in the handwriting of the same individual.

In support of his first assignment of error, the appellant argues that the trial court erred in accepting in evidence the handwriting exemplars and related evidence, because Officer Scharfenberg had no probable cause for taking the exemplars and because he failed to advise the appellant of his constitutional rights prior to the execution of the exemplars. In support of this argument the appellant relies heavily on the United States Supreme Court decision in *Davis* v. *Mississippi,*

394 U.S. 721, and the United States District Court decision from the Western District of Missouri, *United States* v. *Long,* 325 F. Supp. 583. In the *Davis* case finger and handprint exemplars were taken and used as the sole incriminatory evidence in a rape case. The conviction of Davis was not reversed because handwriting exemplars are not admissible in evidence on constitutional grounds. The conviction of Davis was reversed because of the "dragnet" procedure followed in securing the exemplars, and all without probable cause. The state conceded in the *Davis* case that there was neither a warrant nor probable cause for the arrest of Davis.

In *United States* v. *Long, supra,* Long was indicted for forging a government check. A federal agent took handwriting exemplars from Long while he was in the custody of state officers on a state charge. By stipulation it was agreed that at the time the government obtained the handwriting exemplars, the government did not in fact have probable cause to believe the defendant had endorsed the check involved.

The United States Supreme Court has very recently distinguished the *Davis* and *Long* cases from the case at bar in *United States* v. *Dionisio,* (Slip Opinion), decided on January 22, 1973, on certiorari to the United States Court of Appeals for the Seventh Circuit. In that case Dionisio was held in contempt of court for refusing to comply with a court order to give voice exemplars for comparison with the recorded conversations that had been received in evidence. In refusing to furnish the voice exemplars, Dionisio asserted that these disclosures would violate his rights under the Fourth and Fifth Amendments. The Court of Appeals reversed the District Court decision on Fourth Amendment grounds and in reversing the Court of Appeals, the United States Supreme Court distinguished the case of *Davis* v. *Mississippi, supra,* in the following language:

> ". . . in *Davis* it was the initial seizure—the lawless dragnet detention—that violated the Fourth and Fourteenth Amendments—not the taking of the fingerprints."

The court concluded the *Dionisio* opinion as follows:

> "Since the Court of Appeals found an unreasonable search and seizure where none existed, and imposed a preliminary showing of reasonableness where none was required, its judgment is reversed and this case is remanded to that Court for further proceedings consistent with this opinion."

On the same day the *Dionisio* case was decided, the United States Supreme Court had before it the case of *United States* v. *Mara, aka Marasovich,* (Slip Opinion), on certiorari to the United States Court of Appeals for the Seventh Circuit. In that case the respondent, Richard J. Mara, was held in contempt by the District Court for refusing to give handwriting exemplars. The Court of Appeals for the Seventh Circuit reversed on Fourth Amendment grounds and in reversing the Court of Appeals, the Supreme Court said:

> "Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice. See *United States* v. *Doe (Schwartz),* 457 F. 2d 895, 898-899; *Bradford* v. *United States,* 413 F. 2d 467, 471—472; cf. *Gilbert* v. *California,* 388 U. S. 263, 266—267. Consequently the Government was under no obligation here, any more than in *Dionisio,* to make a preliminary showing of 'reasonableness.'"

In a footnote to *Mara,* the court distinguished between handwriting exemplars for the mere purpose of comparing the physical characteristics of handwriting from writing which seeks to obtain written answers to incriminating questions or a signature on an incriminating statement which would run afoul of the privilege against self-incrimination under the Fifth Amendment. We find no merit in the appellant's first assignment.

The appellant's contention that the court erred in denying the defendant's motion for a directed verdict as to count Nos. 4 and 6 of the information is also without merit. Counts 4 and 6 charged the appellant

with uttering the two checks at Magic Mart and Don's Model Market respectively. The employee witnesses from these stores did not make in-court identification of the appellant as the person who uttered the checks but the evidence stands undisputed that all four of the checks came from the same book. The in-court identification of the appellant as the person who endorsed and cashed two of the checks is likewise undisputed. Special Agent Buckley's testimony to the effect that the checks referred to in count Nos. 4 and 6 of the information were endorsed in the handwriting of the appellant, together with the other evidence including the state driver's license number on two of them, is sufficient evidence to sustain the jury's verdict that the appellant was guilty under count Nos. 4 and 6 of the information.

We are likewise of the opinion that the appellant's third contention is without merit. In his opening statement to the jury the state's attorney mentioned the fact that the appellant was charged with forgery and uttering. A verdict was directed for the appellant on the forgery charges at the close of the state's case, and in his closing argument to the jury the attorney for the state stated:

"Ladies and gentlemen, I come to you a little red faced now. The Judge has, as he told you, taken from your consideration the forgery counts in this Information. This Information charged this defendant, as I told you in opening, with four counts of forgery and four counts of uttering. You can no longer consider whether or not he forged this check, but whether or not he passed it. It was a stupid mistake on our office's part because we alleged by mistake that he forged all of this on the face —".

At this point the attorney for the appellant moved for a mistrial and stated:

"I don't think the State is entitled to go into the reasons behind the granting of a directed verdict. I think it is improper and prejudicial. The ruling of the Court has been made, the jury has been made aware of it, neither attorney then is entitled to com-

ment upon it. This is what the State is *intending* to do." (Emphasis supplied).

The trial court then stated:

"I don't think there has been any prejudice at this point. He is merely stating what the Court has already stated and that is: That it has been removed from their consideration."

At the appellant's request, the court again explained to the jury his action in directing the verdict and in doing so, said: ". . . there was a complete failure of proof on the forgery." Some colloquy continued between the attorneys and the court, but the trial court has considerable discretion in controlling the argument of attorneys at jury trials and we cannot say that the trial court abused his discretion or erred in his finding that there was no prejudice to the appellant in this case.

The judgment is affirmed.