STATE of Arkansas *v.* Robert PITTMAN, Jr.

CR 04-821                                               200 S.W.3d 893

Supreme Court of Arkansas
Opinion delivered January 13, 2005

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellant.

*Gary Potts*, for appellee.

DONALD L. CORBIN, Justice. The State of Arkansas brings this interlocutory appeal from the order of the Desha

County Circuit Court granting Appellee Robert Pittman Jr.'s motion to suppress a custodial statement. The trial court suppressed the statement because it concluded that the officer had continued the interrogation environment after Appellee had invoked his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the officer knew or should have known that his actions would have likely caused Appellee to incriminate himself. The State contends that the trial court's ruling is based upon an erroneous interpretation of the law. We agree, and we reverse and remand.

The record reflects that Appellee was one of several suspects arrested for forgery and theft of property by the Dumas Police Department. He was brought to the police station, where Officer Charles Blevins advised him of his *Miranda* rights. Appellee told the officer that he would not give a statement without a lawyer present. At that point, the interrogation ceased. However, Appellee remained in the interrogation room with Blevins, while the officer reviewed Appellee's case file. No conversation of any sort occurred during this time. After the passage of approximately ten minutes, Blevins realized that he should ask Appellee for handwriting samples. To Blevins's surprise, Appellee agreed to give the samples. Blevins then spent approximately three minutes comparing the samples to the forged check. Again, no conversation occurred during this time. The silence was subsequently broken by Appellee's spontaneous statement that he had signed the check.

The trial court held that Officer Blevins's actions violated Appellee's constitutional rights. The trial court explained that the offensive action was the officer's preservation of "the interrogatory environment for fifteen to twenty minutes after the suspect invoked his right to remain silent," coupled with the request for handwriting samples. The trial court relied on the holding in *Rhode Island v. Innis*, 446 U.S. 291 (1980).

The State asserts that the trial court made an error of law in suppressing Appellee's statement, because the statement was spontaneous and was therefore not the product of custodial interrogation. Appellee does not dispute the State's assertion that his statement was not the result of direct questioning by the officer. However, he contends that the officer's actions in holding him in the interview room and requesting handwriting samples from him after he had invoked his *Miranda* rights was the functional equivalent of interrogation under *Innis*, 446 U.S. 291 (1980).

Before we may address the merits of the issue on appeal, we must first determine whether this is a proper State's appeal under Ark. R. App. P.—Crim. 3. This court has recently discussed this issue:

> Under Rule 3, the right of appeal by the State is limited. This court has consistently held that there is a significant difference between appeals brought by criminal defendants and those brought on behalf of the State. *State v. Williams*, 348 Ark. 585, 75 S.W.3d 684 (2002); *State v. Pruitt*, 347 Ark. 355, 64 S.W.3d 255 (2002). The former is a matter of right, whereas the latter is neither a matter of right, nor derived from the Constitution, but rather is only granted pursuant to the confines of Rule 3. *Id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *State v. Warren*, 345 Ark. 508, 49 S.W.3d 103 (2001); *State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33 (2000); *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997). As a matter of practice, this court has only taken appeals "which are narrow in scope and involve the interpretation of law." *Id.* at 595, 955 S.W.2d at 519 (quoting *State v. Banks*, 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995)). We do not permit State appeals merely to demonstrate the fact that the trial court erred. *Id.*
>
> Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *Id.* Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *Williams*, 348 Ark. 585, 75 S.W.3d 684; *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000). Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *Id.*

*State v. Markham*, 359 Ark. 126, 127–28, 194 S.W.3d 765, 767 (2004).

As set out above, the issue presented in this appeal is whether an officer's mere presence with the accused in an interview room together with a request for handwriting samples after the accused has invoked his *Miranda* rights is the functional

equivalent of interrogation, such that a spontaneous statement made by the accused must be suppressed. This issue is one of law for which our resolution is of significant importance to the correct and uniform administration of the criminal law. Accordingly, we accept the State's appeal.

We initially note that it is well settled that once an accused has invoked his right to remain silent, it must be scrupulously honored by the police. *See Michigan v. Mosley*, 423 U.S. 96 (1975); *Miranda*, 384 U.S. 436; *Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002); *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001). It is equally well settled that a suspect's voluntary or spontaneous statement, even though made in police custody, is admissible against him. *See Innis*, 446 U.S. 291; *Miranda*, 384 U.S. 436; *Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003); *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002). A spontaneous statement is admissible because it is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination. *Arnett*, 353 Ark. 165, 122 S.W.3d 484; *Fairchild*, 349 Ark. 147, 76 S.W.3d 884. In determining whether a statement is spontaneous, we focus on whether the statement was made in the context of a police interrogation, meaning direct or indirect questioning put to the accused by the police with the purpose of eliciting a statement from him. *Id.*

In *Innis*, 446 U.S. 291, the Supreme Court observed that the evils sought to be avoided by the *Miranda* decision were certain techniques of persuasion, coercion, or psychological ploys employed by the police, that, in a custodial setting, were thought to amount to interrogation. Thus, the Court held that the safeguards of *Miranda* "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300-01. The Court then held that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (footnotes omitted). The Court explained:

> The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection

against coercive police practices, without regard to objective proof of the underlying intent of the police. *A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.* But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id.* at 301–02 (footnotes omitted) (emphasis added).

The facts of that case were that Innis had been arrested for robbing a cab driver at gunpoint. When he was read his *Miranda* rights, he declined to give a statement without a lawyer. While he was being transported to the jail, two of the officers in the patrol car had a brief conversation about the missing gun used during the robbery and how they were concerned about it being left near the crime scene, which was near a school for mentally handicapped children. Innis interrupted the officers' conversation and told them where they could find the gun. The Supreme Court concluded that Innis had not been subjected to interrogation, reasoning:

[I]t cannot be fairly concluded that the respondent was subjected to the "functional equivalent" of questioning. It cannot be said, in short, that Patrolmen Gleckman and McKenna should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent. There is nothing in the record to suggest that the officers were aware that the respondent was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children. Nor is there anything in the record to suggest that the police knew that the respondent was unusually disoriented or upset at the time of his arrest.

The case thus boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response. Given the fact that the entire conversation appears to have consisted of no more than a few offhand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond.

*Id.* at 302–03 (footnote omitted).

More recently, in *Pennsylvania v. Muniz*, 496 U.S. 582 (1990), the Court held that an officer's statements or actions made during the administration of physical sobriety tests "were not

likely to be perceived as calling for any verbal response and therefore were not 'words or actions' constituting custodial interrogation[.]" *Id.* at 603. In so holding, the Court elaborated on the test from *Innis*:

> Thus, custodial interrogation for purposes of *Miranda* includes both express questioning and words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to "have . . . the force of a question on the accused," and therefore be reasonably likely to elicit an incriminating response.

*Id.* at 601 (quoting *Harryman v. Estelle*, 616 F.2d 870, 874 (5th Cir. 1980)).

In the present case, it is undisputed that Appellee invoked his right to remain silent after being advised of his *Miranda* rights by Officer Blevins. It is also undisputed that his subsequent admission that he had signed the forged check was not the product of any direct questioning or interrogation from the officer. The question then is whether his spontaneous statement was the product of the "functional equivalent" of interrogation. The trial court concluded that it was, because the officer had continued the interrogation environment by remaining in the interview with Appellee for approximately fifteen to twenty minutes and by initiating contact with Appellee by requesting handwriting samples. Under the foregoing precedent, we conclude that this ruling was erroneous.

The mere fact that the officer sat silently in the interview room with Appellee for a brief period of time, while he looked over his case file, is not the sort of coercive police practice or psychological ploy that *Miranda* was designed to guard against. Nor is the officer's request for handwriting samples, because such evidence, which was sought only for comparison purposes, is not testimonial in nature and therefore not protected by the Fifth Amendment. *See United States v. Mara*, 410 U.S. 19 (1973); *Gilbert v. California*, 388 U.S. 263 (1967); *McGill v. State*, 253 Ark. 1045, 490 S.W.2d 449 (1973); *McGinnis v. State*, 251 Ark. 160, 471 S.W.2d 539 (1971). It cannot fairly be said that Officer Blevins knew or should have known his request for handwriting samples under the circumstances was reasonably likely to elicit an incriminating response from Appellee. Indeed, the officer testified that he did not believe that Appellee would oblige his request for the

samples, let alone make an incriminating statement. Moreover, the officer's request did not call for any verbal response from Appellee. Finally, there is nothing in the record to indicate that Appellee had any special susceptibilities or that the officer was aware of any. We thus conclude that Appellee's subsequent confession was a spontaneous statement initiated by him and was not the product of police interrogation.[1] We reverse the trial court's order of suppression and remand this matter for further proceedings.

Reversed and remanded.

---

[1] There was some dispute below as to whether Appellee invoked his right to counsel, as opposed to his right to remain silent, when he told Officer Blevins that he would not give a statement without a lawyer present. In so far as that may be viewed as a specific request for counsel, our determination that his confession is admissible remains. Because Appellee initiated the confession, he waived his right to counsel at that time. *See Edwards v. Arizona,* 451 U.S. 477 (1981); *Lacy v. State,* 345 Ark. 63, 44 S.W.3d 296 (2001), *overruled on other grounds in Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003).