STATE of Arkansas *v.* Agustin MORENO

CR 07-327                                              265 S.W.3d 751

Supreme Court of Arkansas
Opinion delivered October 25, 2007

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellant.

*Thurman Ragar, Jr.*, Deputy Public Defender, for appellee.

PAUL E. DANIELSON, Justice. The appellant, the State of Arkansas, appeals from the circuit court's order granting the motion to suppress of the appellee, Agustin Moreno. For its sole point on appeal, the State argues that the circuit court erred in granting the motion to suppress because the defendant was given valid *Miranda*

warnings in his native tongue before he was given a second set of warnings at the beginning of his videotaped statement, the set which was later found to be unconstitutional. Because we hold that this is an improper state appeal, we dismiss the appeal.

The underlying facts are these. On December 4, 2005, Moreno was questioned by Crawford County Sheriff Deputy Halbert Torraca regarding events that had allegedly occurred earlier in Moreno's home. Moreno does not speak English. While he can speak Spanish, he is unable to read it.

Additional facts were established at the October 23, 2006 suppression hearing by the testimony of Deputy Torraca. Torraca testified that he *Mirandized* Moreno in Spanish at his residence, translating it from an English Miranda warning card. While Torraca never received any formal education on reading and writing in Spanish, he grew up speaking Spanish as he lived with his grandparents who were Puerto Rican and could not speak any English. At age eleven, Torraca moved in with his mother and stepfather, a man of Mexican descent, and both English and Spanish were spoken in that household. While he is admittedly "a little bit slow at it," Torraca testified that he can read English and translate it into Spanish.

Torraca began to question Moreno regarding the allegations and Moreno started to answer affirmatively that he had inappropriately touched his niece, a minor child. At that time, Torraca noticed that the battery on his recording device had gone out and he decided to place Moreno under arrest and take him to the Crawford County Sheriff's Department, where he had access to audio and video recording. Moreno was then placed in an interview room at the sheriff's department.

Before questioning Moreno further, a videotape was started and Torraca went over the rights form with him. Torraca had a copy of the English rights form and tried to explain the rights to Moreno, who was equipped with the Spanish rights form. Moreno never indicated that he could not understand what Torraca was explaining and signed the rights form when asked.

The interpreter from the Administrative Office of the Courts provided the circuit court with a transcript of the translation of Torraca's interview with Moreno. The transcript provides in pertinent part:

> TORRACA: Sorry that took awhile, there are a lot of (unintelligible). Ok ... ok, right now I am going to re

... um, I'm going to read you ... eh ... I'm going to read you the rights again, ok? Because I want you to understand your rights well, ok? Ok. And here you put (unintelligible). Ok, before uh ... ask you questions, uh ... you ca ... you ... uh ... you ha ... you have the right of to remain silent, do you understand that?

MORENO: U-hu.

TORRACA: Ok? Uh ... you, each thing that you says, can use it uh ... against you in ... a court of law, ok? Uh ... you have the right to consult a lawyer, before I ask you rights. Do you understand that?

MORENO: Yes

TORRACA: Yes? Ok, uh ... if you don't uh ... you ... if you want a lawyer and ... and ... don't have the money for a lawyer, we can writ ... write you down a law ... a lawyer, before I ask you rights. You do understand that right?

MORENO: Mh-hu.

TORRACA: Ok? Uh ... If you de ... decide to uh ... to answer my questions, ok? Then some eh ... at so ... some time, that you decide yourself you want a lawyer, you can stop to answer our question you can stop and eh ... to wait for a lawyer. You do understand that right? Ok, uh ... ok, and here it says that uh ... uh ... Can you read Spanish?

MORENO: Very little.

TORRACA: Very little? Ok. Here it says the place, ok. You see here that it says place?

MORENO: Yes. And here?

TORRACA: Here ... here goes write down, this is the name of the ... of our department, ok? Ok, today's date is: twelve, four, zero five and the time is; one thirty five, ok? Uh ... u ... uh ... do you want to read this for a moment?

MORENO: Let's see what it says (unintelligible) more or less.

TORRACA: Uh . . . uh . . . ok, you do understand your rights?

MORENO: Yes, yes I understand.

TORRACA: Ok, uh . . . also under . . . uh . . . nobody hasn't threatened you or promised you nothing.

MORENO: No.

TORRACA: Ok, uh . . . uh . . . I didn't promise you . . . I haven't promised you anything, uh . . . I haven't threatened you, so you answer my questions, uh . . . yes? Have I threatened you?

MORENO: No. No.

TORRACA: No? Ok, uh . . . I want you to sign here.

Moreno did sign the form indicating that he understood his rights and continued to make several incriminating statements during the course of the questioning by Torraca. On October 18, 2006, Moreno filed a motion to suppress any statement that he made to Torraca without the presence of counsel, claiming that his statements were made prior to his being properly informed of his *Miranda* rights and in violation of his constitutional right to the advice of counsel. The circuit court granted Moreno's motion on January 26, 2007, finding that: Moreno did not speak English with enough proficiency sufficient for him to understand *Miranda* warnings and rights; Moreno could not, in English, have made an intelligent waiver of those rights; and, the transcript of the interrogation showed that Torraca sufficiently failed to advise Moreno of his *Miranda* rights in Spanish. The State filed a notice of appeal, which appeal is now before this court.

In its jurisdictional statement, the State argues that the instant appeal involves the correct and uniform administration of the law because the circuit court erroneously interpreted the law to conclude that the second of two sets of *Miranda* warnings given in Spanish was inadequate to support Moreno's waiver of his *Miranda* rights and there is a risk that the circuit court's interpre-

tation of Ark. R. Crim. P. 16.2(e) (2007) will be at odds with the interpretations of other circuit courts. The State contends that the circuit court erred by finding that Moreno did not receive proper *Miranda* warnings and that his waiver of those rights was not knowingly, intelligently, and voluntarily made, as the State proved by a preponderance of the evidence that Moreno was given full and correct warnings not only at the time the video recording was made, but also when he was first arrested at his residence. Furthermore, the State alleges the circuit court erred in applying the law regarding *Miranda* warnings when it suppressed Moreno's statements.

Moreno responds that the State's arguments realistically turn on the circuit court's application of the law under the specific facts of this case, that Moreno did not advance his motion to suppress based on any new, novel, or untested legal theories, and that, for those reasons, the instant appeal is an improper state appeal. As to the merits, Moreno contends that the circuit court correctly decided that the insufficiency of Torraca's translation of the *Miranda* warnings into Spanish prevented Moreno from fully understanding the *Miranda* rights he waived.

Arkansas Rule of Appellate Procedure – Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence[.]" Ark. R. App. P. – Crim. 3(a)(1) (2006). It further states:

> (c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that *the correct and uniform administration of the criminal law* requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. Crim. P. 3(c) (emphasis added).

This court has frequently observed that there is a significant and inherent difference between appeals brought by criminal

defendants and those brought on behalf of the State. *See State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005). The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Ark. R. App. P.–Crim. 3. *See id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *See id.*

As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *See State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005). We do not permit State appeals merely to demonstrate the fact that the circuit court erred. *See id.* Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *See id.* Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *See id.* Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *See id.*

Here, the State specifically concludes in its brief that the circuit court "erred in *applying* the law regarding *Miranda* warnings." The State does not allege that the circuit court misinterpreted the law; rather, the State argues that the circuit court erred in finding that Torraca did not adequately translate the *Miranda* warnings in such a way that Moreno fully understood what rights he was being asked to waive. The State does not argue how the circuit court misinterpreted the law; instead, it attempts to prove how the facts in this case are more analogous to cases that the State finds more favorable. In order to make a ruling on Moreno's motion to suppress, the circuit court was required to review the facts and circumstances surrounding the *Miranda* warnings given to him and the waiver of his rights.

While the State, in its reply, contends that the question presented to this court is "whether non-English language *Miranda* warnings are sufficient if they convey the essence of the *Miranda* rights and, alternatively, whether a previous giving of *Miranda* warnings in a suspect's native language is sufficient to supplant a

later, arguably flawed, giving of those warnings," both suggested questions presuppose that the warnings given in this case did properly convey the essence of the *Miranda* rights, which the circuit court did not find, and that a previous set of warnings were given fully in the suspect's native language. Those are both large presumptions and would require an intensive factual investigation by this court.

Indeed, this appeal is not one requiring interpretation of our criminal rules; instead, it raises issues involving the application of our rules to the specific facts of this case. It does not appear that a review of this appeal would have widespread ramifications on the interpretation of our criminal law. As such, this appeal clearly does not involve the correct and uniform administration of the criminal law and does not fall within the confines of Ark. R. App. P. – Crim. 3. We, therefore, dismiss the appeal.

Appeal dismissed.