SLIP OPINION

Cite as 2015 Ark. App. 81

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–13–853

| | |
|---|---|
| DAVID WADE TENNANT<br>APPELLANT | **Opinion Delivered** February 11, 2015 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CR2013-0082-1(B)] |
| | HONORABLE ROBIN F. GREEN, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant David Tennant was convicted by the Benton County Circuit Court of one count of possession of drug paraphernalia, a Class D felony.[1] On appeal, Tennant raises three arguments for reversal: 1) the circuit court erred in failing to suppress his un–Mirandized statements; 2) Tennant's subsequent Mirandized statement was the fruit of the poisonous tree and should likewise have been suppressed; and 3) without his two statements, there was insufficient evidence to convict on the possession-of-drug-paraphernalia charge. We find no error and affirm.

---

[1] Appellate counsel originally filed a no-merit brief. This court denied the motion to withdraw, however, because counsel failed to adequately address an adverse ruling that occurred during trial: whether Tennant made an incriminating statement to the arresting officer and whether that officer's threat of arrest was reasonably likely to elicit an incriminating response. *Tennant v. State*, 2014 Ark. App. 403, 439 S.W.3d 61. Tennant has now submitted a merit brief.

SLIP OPINION

I. *Sufficiency of the Evidence*

Although this is the third and final argument raised in Tennant's brief, double-jeopardy considerations require this court to consider challenges to the sufficiency of the evidence prior to review of any asserted trial errors. *Carter v. State*, 360 Ark. 266, 200 S.W.3d 906 (2005); *Foshee v. State*, 2014 Ark. App. 315. Tennant preserved his sufficiency argument by timely seeking a motion to dismiss from the circuit court. A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence. *Vance v. State*, 2011 Ark. App. 413. When the sufficiency of the evidence is challenged in a criminal conviction, we review the evidence in the light most favorable to the State and affirm if the verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence that induces the mind to go beyond mere suspicion or conjecture, and that is of sufficient force and character to compel a conclusion one way or the other with reasonable certainty. *Id.*

We turn then to an examination of the evidence adduced at trial. Sergeant Scott Miller of the Siloam Springs Police Department was dispatched to a fight involving three individuals in a red or maroon Firebird. When Miller arrived at the scene, he found a red Firebird with three people inside, two of whom he recognized through numerous past dealings: the driver, Collin Self, and appellant Tennant, who was sitting in the back seat. As Miller approached the car, he saw Self making "a lot of hurried movement" and reaching down underneath the front seat. There was also a lot of movement from the passenger-side back seat, where Tennant was sitting. Miller walked up to the car, identified everyone, and,

while he was speaking to them, noticed the handle of a spoon and the plunger end of a syringe sticking out from under the driver's seat.

Miller asked everyone about the fight. Everyone gave consistent stories that Tennant and the woman in the car, Lucinda McCartha, had gotten into an argument. Miller then asked Self about the items under the front seat. Self was not cooperative and would not answer any questions.

Based on the occupants' behavior, the officer's observation, and the officer's knowledge of Self's and Tennant's histories, Miller conducted a probable-cause search of the car. Miller's search revealed the following items: an uncapped syringe with a liquid substance in it; a spoon with a white-powdery residue; a cotton ball under the seat; a cooler bag containing an empty package of syringes and three unused syringes; and a "PowerAde container about half full of liquid that appeared to have something dumped in it, which is consistent of [*sic*] a crystal-like substance."

Miller again asked the occupants of the car what they knew about the items found in the search. Miller primarily addressed his questions to Self because Self was the driver; however, all three denied any knowledge of the items. Miller informed Tennant and Self that, "if nobody is going to own this stuff then I have no choice but to arrest all of you for possession." Tennant "began to yell at Mr. Self about owning it and own what is yours."[2] Self began yelling back at Tennant, and Miller decided to arrest them all for constructive

---

[2] Tennant sought to strike or suppress his statement to Miller, but the circuit court denied his request. This denial is the subject of Tennant's second point on appeal and will be addressed more fully below.

possession of the items found in the car. Tennant, who was searched incident to the arrest, had a syringe end cap and a syringe in his pocket. Once everyone was taken to the police station and given their *Miranda* warnings, Tennant told Miller that he and the others had gotten together to get high on methamphetamine.

Tennant testified on his own behalf at trial. He denied knowing about or ever seeing the needles in the car, but he said that he saw the needle caps on the center console of the car and picked them up and put them in his pocket because he did not know what they were. Tennant said that he observed a needle on the ground while the police officer was questioning him, but he did not "realize exactly what it was." He agreed that he told Self to "man up to whatever was his and take ownership and he would not do it." Tennant said he "guessed" the paraphernalia was Self's, because "that is the first time I had ever seen the stuff when you showed me pictures of it."

Examining all the evidence introduced at trial, we conclude that sufficient evidence supported Tennant's conviction. A person who "possesses drug paraphernalia with the purpose to use the drug paraphernalia to inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter upon conviction is guilty of . . . a Class D felony if the controlled substance is methamphetamine or cocaine." Ark. Code Ann. § 5-64-443(a)(2) (Repl. 2006).

Tennant argues on appeal that statements he gave to police should have been suppressed, and without those suppressed statements, there was insufficient evidence to support his conviction. Contrary to Tennant's assertion, however, when reviewing the

sufficiency of the evidence supporting a conviction, this court considers all of the evidence introduced at trial, whether correctly or erroneously admitted, and disregards any alleged trial errors. *Populis v. State*, 2011 Ark. App. 334; *Camacho-Mendoza v. State*, 2009 Ark. App. 597, 330 S.W.3d 46. Here, drug paraphernalia, including syringes containing a liquid substance and a spoon with powdery residue, were found in the vehicle in which Tennant was a passenger, and a search of Tennant's person revealed a syringe and a syringe cap. His physical possession of drug paraphernalia, coupled with his statement to Miller that they "had gotten together to get high on methamphetamine," constituted substantial evidence to support his conviction.

## II. *Suppression of First Statement*

In what is actually Tennant's first numbered point on appeal, he asserts that the circuit court should have suppressed the statement he made to Miller at the time of his arrest. In reviewing the trial court's denial of a motion to suppress a statement, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004); *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003).

Tennant contends that Miller's statement that he would arrest everyone if no one "owned this stuff" was intended to elicit an incriminating statement. As a result, he argues that his subsequent statements to Self that Self needed to "own what's yours" were the result

of a custodial interrogation without benefit of being advised of his *Miranda* rights. Therefore, Tennant contends, the circuit court should have suppressed his statement to Miller.

We agree that Tennant and the others were clearly in custody when his on-the-scene statement was made; no reasonable person would feel free to leave when, as occurred here, a law enforcement officer informs him that he is "not at liberty to leave."[3] We disagree, however, that Tennant's statement was incriminating and warranting of suppression. An incriminating statement is one "that tends to establish the guilt of someone, especially the person making it." *Black's Law Dictionary* 1539 (9th ed. 2009). Here, according to Miller, Tennant began to "yell at Mr. Self about owning it and own what's yours." In Tennant's own testimony, he related that he said to Self, "you need to man up to whatever is yours and take ownership." There is nothing in this statement that tends to establish Tennant's guilt.

In support of his argument that his statement was incriminating, Tennant relies on *People v. Baez*, 944 N.Y.S.2d (N.Y. App. Div. 2012). This reliance is misplaced. In *Baez*,

---

[3] In our previous opinion denying counsel's motion to withdraw and ordering rebriefing, we framed the issue as follows:

> Miller admitted that Tennant was in custody but had not been given his *Miranda* warnings when he and Self began telling each other to "man up" and "own up" to the paraphernalia. Miller also testified that he told Tennant and Self that if no one "owned this stuff," he would arrest them all. In *Hall v. State*, 361 Ark. 379, 206 S.W.3d 830 (2005), the supreme court noted that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Hall*, 361 Ark. at 389, 206 S.W.3d at 836 (quoting *State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005), and *Rhode Island v. Innis*, 446 U.S. 291 (1980)).

*Tennant*, 2014 Ark. App. 403, at 4–5, 439 S.W.3d at 64.

police officers ordered five occupants out of a car and subsequently found a knife in the vehicle. Without advising anyone of his or her *Miranda* rights, the officers threatened to arrest everyone in the car if the owner of the knife did not come forward; appellant Baez then said the knife was his. The appellate court held that the group was in custody, that the officer's threat to arrest everyone was "the functional equivalent of interrogation under *Miranda*," and that Baez made an incriminating statement as a result. Here, unlike *Baez*, there was no incriminating statement. In none of Tennant's statements did he acknowledge or admit to *his* ownership of the paraphernalia. Because the statements were not incriminating, the circuit court did not err in denying his motion to suppress. *See Flanagan v. State*, 368 Ark. 143, 150–51, 243 S.W.3d 866, 871 (where appellant was in custody and made a statement, but the statement was not incriminating, there was no error in refusing to suppress the statement).

### III.   *Post-Arrest Statement*

Finally, Tennant argues that the illegality of his first statement tainted his second, post-arrest, post-*Miranda* statement that "the group was there to get high." As noted above, after all three occupants of the car were taken to jail, Miller advised each of them of their *Miranda* rights. After doing so, Miller began questioning the group about the items that had been discovered in the car, and Tennant "came forward and admitted that they had all gotten together and they had gone down there to all get high." Tennant argues that Miller "exploited the statements made prior to the giving of the *Miranda* warnings . . . to obtain an admission by Tennant that he was present to use the drugs and paraphernalia." He therefore

SLIP OPINION

argues that, because the second statement was the fruit of the poisonous tree, it should have been suppressed.

With respect to the fruit-of-the-poisonous-tree doctrine, the pertinent inquiry is "whether, *granting the establishment of the primary illegality*, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Osburn v. State*, 2009 Ark. 390, at 20, 326 S.W.3d 771, 784 (emphasis added) (quoting *Wong Sun v. United States*, 371 U.S. 471 (1963)). Here, as discussed above, there was no primary illegality; therefore, the fruit-of-the-poisonous-tree doctrine has no applicability. "Where the tree is not 'poisonous,' neither is the fruit." *Koster v. State*, 374 Ark. 74, 89, 286 S.W.3d 152, 165 (2008) (citing *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007)).

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Doralee Chandler*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.