Brian Edward ROBINSON  *v.*  STATE of Arkansas

CR 07-887                                                          283 S.W.3d 558

Supreme Court of Arkansas
Opinion delivered April 24, 2008

[Rehearing denied May 29, 2008.*]

---

\* GLAZE and BROWN, JJ., would grant rehearing.

*Lilly & Deprow, PLC,* by: *Grant C. DeProw,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant Brian Robinson was convicted in a jury trial of first-degree murder, a Class Y felony and a violation of Ark. Code Ann. § 5-10-102 (Repl. 2006), and vehicular fleeing, a Class A felony and a violation of Ark. Code Ann. § 5-54-125 (Repl. 2005). For these convictions, Robinson was.sentenced by a Randolph County jury to life imprisonment in the Arkansas Department of Correction. Appellant brings his appeal and argues that the circuit court erred in refusing to suppress Robinson's statement to Arkansas State Police. We reverse and remand.

On October 17, 2006, the victim, Brian Wilbanks, and Cheryl Crow arrived at a residence, which she shared with Robinson, on Bucksnort Road near Pocahontas. As Crow and Wilbanks sat in Wilbanks's pickup truck, Robinson confronted the couple. An argument ensued, and Robinson shot Wilbanks. Robinson then fled the scene in his vehicle. Robinson's flight escalated into a police chase. The chase ended when a patrol car was hit by Robinson's car. Robinson ran from his car and was apprehended by Randolph County officers in the woods.

After the pursuit on foot, Sheriff Brent Earley took Robinson into custody and read Robinson his *Miranda* rights from a pre-printed card. Robinson indicated that he understood his rights. Earley asked, "Why are you running from the police?" Robinson responded, "I don't want to say anything right now." Earley then took him down the hill and asked Robinson why he would "shoot somebody over a woman." Robinson replied that "this goes back a lot further than what you understand." Winded from the chase, Earley turned Robinson over to a couple of deputies and went back into the woods to look for additional evidence. The officers put Robinson in the passenger seat of a patrol vehicle at the scene of Robinson's arrest.

Special Agent Wendall Jines confirmed with Robinson that he had been given his *Miranda* rights and that he understood those rights. According to Jines's testimony, he approached Robinson and said, "I need to talk to you about what happened. Okay? Do you understand your rights as the sheriff advised you earlier?" Robinson replied "no" at first but added, "Yes, sir. Yes, sir. I have." Jines then taped Robinson's statement while the two individuals sat in the patrol vehicle at the scene. Jines further testified that once Robinson gave his statement, he never requested an attorney and never attempted to end the conversation. Robinson then gave a second statement later that morning at the Randolph County Sheriff's Department.

On November 9, 2006, Robinson filed a motion to suppress. In his motion, he requested a *Denno* hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and Ark. Code Ann. § 16-89-107 (Repl. 2005). On February 26, 2007, the circuit court held a hearing on Robinson's motion to suppress and denied his motion, ruling that the first statement was to be admitted at his trial. On March 2, 2007, a Randolph County jury convicted Robinson of first-degree murder and vehicular fleeing, and he received a sentence of life imprisonment. He now brings his appeal.

For his first point on appeal, Robinson argues that the circuit court erred in denying his motion to suppress his statement given after he was apprehended by police on the night of the murder. Specifically, Robinson contends that Sheriff Earley and Special Agent Jines violated Ark. R. Crim. P. 4.5 (2007) by improperly refusing to cease interrogation. In response, the State argues that the circuit court properly denied Robinson's motion to suppress the statement that he gave to police. The State contends that Robinson never invoked his right to remain silent at any time

during his interview. Further, the State counters that there was no evidence of any coercive behavior by any officer that suggests that Robinson made a statement against his will.

We clarified the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession in *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), where we stated: "We make an independent determination based upon the totality of the circumstances, and the ruling will only be reversed if it is clearly against the preponderance of the evidence." *Grillot*, 353 Ark. at 310, 107 S.W.3d at 145.

A person subject to custodial interrogation must first be informed of his right to remain silent and right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966). "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74; *see also* Ark. R. Crim. P. 4.5 (2007). An indication that a defendant wishes to remain silent is an invocation of his *Miranda* rights. Once the right to remain silent is invoked, it must be "scrupulously honored." *State v. Pittman*, 360 Ark. 273, 276, 200 S.W.3d 893, 896 (2005); *Whitaker v. State*, 348 Ark. 90, 95, 71 S.W.3d 567, 570 (2002) (citing *Miranda*, 384 U.S. at 479). The meaning of "scrupulously honored" was discussed in *James v. Arizona*, 469 U.S. 990, 992-93 (1984), where the United States Supreme Court stated:

> To ensure that officials scrupulously honor this right, we have established in *Edwards v. Arizona*, [451 U.S. 477 (1981)], and *Oregon v. Bradshaw, supra,* the stringent rule that an accused who has invoked his Fifth Amendment right to assistance of counsel cannot be subject to official custodial interrogation unless and until the accused (1) "initiates" further discussions relating to the investigation, and (2) makes a knowing and intelligent waiver of the right to counsel under the [waiver] standard of *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and its progeny. *See Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).

Unwarned statements or statements improperly taken after the invocation of the right to remain silent or the right to counsel must be excluded from the State's case in chief to ensure compliance with *Miranda*'s dictates. *See Michigan v. Harvey*, 494 U.S. 344 (1990). In *Standridge v. State*, 329 Ark. 473, 479, 951 S.W.2d 299, 301 (1997), we noted that "[w]e see no distinction between the

right to counsel and the right to remain silent with respect to the manner in which it must be effected." *Id.* at 479, 951 S.W.2d at 301. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475. This high bar on the State's burden of proving waiver of the right to remain silent is best understood as a result of the view that courts are to "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Michigan v. Jackson*, 475 U.S. 625, 633 (1986) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

With this precedent in mind, we turn to the present appeal. At the outset, we note that this case does not present an issue regarding the right to counsel, but rather, Robinson argues that, pursuant to Rule 4.5, the circuit court should have suppressed his statement to Earley because he invoked his right to remain silent when he indicated, "I don't want to say anything right now." Thus, once a defendant is read his or her *Miranda* rights, the relevant inquiry is whether a defendant's initial response "indicated in any manner" under *Miranda* and Rule 4.5 an invocation of the right to remain silent or an invocation of the right to counsel. If so, the interrogation must immediately cease whenever a suspect states that he or she wants counsel, *Miranda*, 384 U.S. at 474, or when he or she invokes the right to remain silent, pursuant to *Miranda* and Rule 4.5.

First, we note that neither the record reflects nor the State argues the existence of a waiver. We agree with Robinson's argument that, under the standard set forth in *Miranda*, he invoked his right to remain silent. Unlike the appellant in *Standridge, supra*, who said, "I ain't ready to talk," but immediately continued answering questions of the police officers, Appellant in this case indicated, "I don't want to say anything right now," immediately upon being advised of his *Miranda* rights. Robinson's response was an invocation of his right to remain silent and an initial indication that he did not wish to be questioned. Having invoked his *Miranda* rights "in any manner" under both *Miranda, supra*, and our Rule 4.5, law enforcement was obligated to "scrupulously honor" his assertion of his rights and should have refrained from continuing to ask Robinson about the crime. *James, supra.*

Second, we note that, after a delay of walking down the hill, Earley asked Robinson why he would "shoot somebody

over a woman," and Robinson replied that "this goes back a lot further than what you understand." At the suppression hearing, Earley testified that he and Robinson "had had some conversation within that time-frame after we got him down the hill." That conversation, however, was not initiated by Robinson. *See Edwards, supra.* Moreover, any additional questioning by Jines should have taken place only if Robinson had initiated discussion with the police and had knowingly and intelligently waived his rights. *See Otis v. State,* 364 Ark. 151, 161, 217 S.W.3d 839, 844 (2005). Therefore, under these circumstances, we hold that, under *Miranda* and Rule 4.5, the officer should have ceased his interrogation after Robinson stated, "I don't want to say anything right now." Because we conclude that Robinson invoked his right to remain silent during his first statement with Earley and never waived that right, and because his motion to suppress included "[a]ny [a]dmission or [c]onfession," we refuse to delve into the merits of his arguments in his first point regarding his subsequent two statements given to Jines.

Therefore, based upon the foregoing reasons, as well as our standard of review in viewing the totality of the circumstances, we hold that the circuit court erroneously denied Robinson's motion to suppress. Accordingly, we reverse the circuit court's ruling and remand for a new trial, which excludes Robinson's statements to Earley and Jines. Because we dispose of Robinson's case on his first point on appeal, we decline to address his second point on appeal regarding the issue of whether his statement was a product of police intimidation and coercion.

Pursuant to Ark. Sup. Ct. R. 4-3(h) (2007), the record in this case has been reviewed for all other objections, motions, and requests made by either party, which were decided adversely to Appellant, and no prejudicial error has been found. *See, e.g., Gillard v. State,* 372 Ark. 98, 270 S.W.3d 836 (2008).

Reversed and remanded.

BROWN and IMBER, JJ., concur.

GLAZE, J., dissents.

ROBERT L. BROWN, Justice, concurring. The crux of this appeal is whether Robinson clearly and unambiguously invoked his right to remain silent after receiving the *Miranda* warnings. The State argues that he did not because he said he did not want to talk "right now," and that could mean he was amenable to talking

later. I agree with the majority that Robinson invoked his right to silence and, as a result, his conviction must be reversed.

I write, however, to underscore that the initial invocation of rights must be clear and unambiguous. If the invocation of rights is not clear, how is law enforcement to know to cease questioning? Surely, an ambiguous response to *Miranda* warnings such as "I want to think about it," would not be a clear invocation of rights, and this court has so held. *See Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995). And if the invocation of rights is unclear, law enforcement may proceed with questioning. *Id.*

The majority, nonetheless, appears to require something less than an initial, unequivocal invocation of rights. What appears to trip up the majority is our criminal Rule 4.5, which reads that no law enforcement officer shall question an arrested person if that person "has indicated in any manner" that he wants to be silent. The majority suggests that an indication "in any manner" is something less than a clear and unambiguous invocation of rights. I disagree. So does the Supreme Court. Only if the request for counsel (and by analogy, the request for silence) is unambiguous and unequivocal must pre-waiver questioning cease. *See Smith v. Illinois*, 469 U.S. 91, 95 (1984) (Court states in its analysis of whether later answers to police questioning cast doubt on the accused's initial request for counsel that occasionally "an accused's asserted request for counsel may be ambiguous or equivocal.").

Accordingly, I too would reverse, but I would clarify for law enforcement, the bench, and bar that a pre-waiver invocation must be clear and unambiguous. If the invocation is unclear or ambiguous, law enforcement is on safe ground in proceeding to question, as was the case in *Bowen v. State, supra.* That is the argument that the State and the dissent make in this case. By not clarifying the point, the majority lends confusion to an important stage of police questioning.

A NNABELLE CLINTON IMBER, Justice, concurring. I believe we should take this opportunity to clarify our prior case law interpreting the United States Supreme Court's decision in *Davis v. United States*, 512 U.S. 452 (1994). In *Davis*, the Court stated that it was unwilling to extend the protection afforded by *Edwards v. Arizona*, 451 U.S. 477 (1981), which requires that law enforcement immediately cease questioning upon a suspect's clear assertion of the right to have counsel present during custodial interrogation. The *Davis* court refused to require yet another layer of protection that

would prevent continued interrogation when the accused *might* want a lawyer. *Davis*, 512 U.S. 452. Thus, it declined to extend *Edwards* to require that police cease questioning when the accused makes an ambiguous or equivocal request for the assistance of counsel. *Id.*

The Court's opinion in *Davis* makes clear that the standard of unequivocality is applicable only *after* the accused initially waives his or her rights and begins to make a statement:

> A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection — if a suspect subsequently requests an attorney, questioning must cease — it is one that must be affirmatively invoked by the suspect.

*Id.* at 460-61. The Court held that, "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 461.

As noted by the majority, Robinson never waived his rights. Thus, his statement, "I don't want to say anything right now," was not required by *Davis* to be unequivocal. Rather, it was sufficient because it was made "in any manner." Ark. R. Crim. P. 4.5 (2007); *Miranda v. Arizona*, 384 U.S. 436, 445 (1966).

Our prior case law seems to suggest a requirement of unequivocality even before a defendant waives his *Miranda* rights. In order to differentiate the standard applicable to the invocation of rights before waiver from the standard applicable when the defendant invokes his rights after waiver, it is necessary to review our decision in *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995). In *Bowen*, the accused was read his *Miranda* rights but made no indication that he understood or waived those rights. *Id.* The accused declined to sign a waiver-of-rights form, saying he "wanted to think about" whether to waive his rights and make a statement. *Id.* at 502, 911 S.W.2d at 564. However, the sheriff continued to question him, and the accused ultimately gave an inculpatory statement. *Id.* We held that the accused waived his rights by implication, as he continued to answer questions even after acknowledging his rights. *Id.* (citing *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993); *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992); *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987)).

We also suggested that the accused's initial invocation was not sufficiently specific under *Davis*: "Our view of this matter is that, by saying he wanted to 'think about' waiver, Mr. Bowen indicated an understanding of what was at stake. We do not regard the statement as an invocation of his rights, however. In a recent case, the Supreme Court has held that the invocation of the right to counsel must be made with specificity. [citing *Davis*.]" *Bowen*, 322 Ark. at 504, 911 S.W.2d at 565. I disagree with this characterization of *Davis*, because *Davis* does not mandate an unequivocal invocation before a knowing and voluntary waiver of the *Miranda* rights. *Davis*, 512 U.S. 452. Nonetheless, *Bowen* is distinguishable on its facts. We stated in *Bowen* that the relevant question was not whether the accused's statement that he wanted to "think about" waiver amounted to an invocation of his right to remain silent, but "whether a subsequent statement may imply waiver." *Bowen*, 322 Ark. at 503, 911 S.W.2d at 565. Thus, we disposed of *Bowen* by dealing with waiver, whereas we approach the case at bar as a question of invocation. The majority is correct in refusing to extend the standard of unequivocality beyond the parameters set forth in *Davis*.

Tom Glaze, Justice, dissenting. Our review of this appeal centers on one issue — whether the circuit court erred in refusing to suppress Robinson's statement to the State Police. From my review of the relevant law, facts, and circumstances, I conclude the circuit court was clearly right, and I would affirm.

As set out in the majority opinion, the relevant facts reflect that Robinson shot and killed Brian Wilbanks. Robinson then fled the scene in his vehicle; the flight escalated into a chase by law enforcement officers, and the chase ended when Robinson's car ran into a police car. Robinson then left his vehicle and fled on foot with Sheriff Brent Earley in pursuit. Upon catching Robinson, Earley read Robinson his rights, which he said he understood. Earley asked, "why are you running from the police?" Robinson replied, "I don't want to say anything *right now*." Earley then took Robinson down the hill where he asked him why he would "shoot somebody over a woman," to which Robinson said, "this goes back a lot further than what you understand." Afterward, Earley turned Robinson over to other officers and left to search for additional evidence. At that point in time, Robinson was placed in the passenger seat of a patrol vehicle, whereupon Special Agent Wendell Jines confirmed that Robinson had been read his rights by Sheriff Earley and understood them. Jines then began taping his

interrogation of Robinson, and Robinson never requested an attorney or attempted to end the interrogation. Robinson, however, disagrees with this, arguing he did assert his right to remain silent.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that when a defendant is subject to custodial interrogation and indicates in any manner that he does not wish to be interrogated, the police may not question him. Our court adopted the *Miranda* rule verbatim on January 1, 1976. *See* Ark. R. Crim. P. 4.5. Citing *Davis v. United States*, 351 U.S. 452 (1994), as authority, our court later held that the invocation of the right to counsel or to remain silent must be made with specificity, and that there was no distinction between the invocation of the right to counsel and the invocation of the right to remain silent with respect to the manner in which it must be effected. See *Standridge v. State*, 329 Ark 473, 951 S.W.2d 299 (1997); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 299 (1995).

In sum, under *Standridge* and *Bowen*, the defendant is required to invoke his right to remain silent with specificity, and the defendant's request must not be ambiguous or equivocal. Moreover, this court has repeatedly held that one may waive one's right to remain silent by implication by merely answering questions. *Bowen, supra; see also Standridge*. In *Davis*, the Court addressed the invocation-of-the-right-to-counsel issue and further held that a request is ambiguous or equivocal if a reasonable officer, in light of the circumstances, would have understood that the suspect was only tentative in invoking his right to remain silent but might later change his mind.

Here, despite Robinson's first statement that he did not want to talk "right now," Robinson nonetheless answered Sheriff Earley's second question about "why would you shoot a man over a woman?" Robinson replied, "This goes back a lot further than what you understand." Special Agent Jines then took custody of Robinson and had Robinson confirm that he had been given his rights. When Jines asked if he understood them, Robinson first said, "No" but added, "Yes, sir. Yes, sir, I have." After Robinson acknowledged he understood his rights, Jines continued his questioning, and Robinson gave a statement. When a reasonable person considers Robinson's remarks to Earley and his statements given to Jines, it becomes clear that Robinson wanted to talk and his intention to do so began with his statements to Earley and subsequently he went "full blown" when Jines interviewed Rob-

inson. Given the banter between Robinson and Jines, I submit that Robinson fully intended to talk further, despite his earlier statement that he did not want to say anything "right now."

In the present case, Robinson's attempted invocation of his right to remain silent was equivocal because he merely said that he did not want to say anything "right now." Robinson's response could reasonably be interpreted to mean that he might (or would) talk later, and he did. Therefore, I would hold that the circuit court did not err in denying his motion to suppress his statements to police.