James WEDGEWORTH *v.* STATE of Arkansas

CR 07-1042                                    288 S.W.3d 234

Supreme Court of Arkansas
Opinion delivered October 2, 2008

[Rehearing denied November 6, 2008.]

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Deborah Nolan Gore*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. This appeal arises from the conviction and sentence of Appellant James Wedgeworth in Union County Circuit Court for the capital murder of Megan Harbison. Appellant was convicted by a jury of capital murder, a violation of Arkansas Code Annotated section 5-10-101 (Repl. 2006) and a class Y felony, and was sentenced to life imprisonment without the possibility of parole. On appeal, he argues that his taped custodial statement was obtained in violation of his Fifth Amendment right to counsel and that the circuit court erred in denying his motion to suppress and in allowing that evidence to be admitted at trial. We reverse and remand.

On July 16, 2005, Megan Harbison was murdered in her apartment in El Dorado. Appellant and the victim were in a relationship for more than one year and, according to Appellant, were supposed to marry when her divorce was final. However, after the victim's divorce became final, she ended her relationship with Appellant. On the night of the murder, he told his mother about the relationship and that the victim had ended it. He left the house, went to the victim's apartment, and shot and killed Megan Harbison.

The El Dorado Police Department was advised that A.F., the victim's eleven-year-old daughter, called 911 and told dispatchers that her mother was covered in blood. Upon arrival, police found A.F. and another juvenile crying and asking for help. Lieutenant Kevin Holt summoned emergency personnel to the residence. The victim's father advised police that his daughter had broken off her relationship with Appellant, and since that time, Appellant had been harassing her and making threats toward her.

Union County police officers arrested Appellant at his parent's residence in Smackover and transported him to the El Dorado Police Department where he was interviewed by Detective Jamie Morrow. At approximately 4 a.m., Detective Morrow read Appellant his rights, and Appellant signed the rights form. When asked if he wished to have an attorney, Appellant replied that he wanted "his attorney," but he did not remember his attorney's name. Detective Morrow told Appellant that he would give him a few minutes to remember his attorney's name, and the

detective left the room. Within five to ten minutes, Detective Morrow returned and asked Appellant if he remembered his attorney's name. Appellant replied that he had not. Detective Morrow asked Appellant, "What do you want to do?" At that time, Appellant indicated that he wanted to make a statement. Detective Morrow said, "Even without an attorney?" Appellant said, "Yes." Detective Morrow used the original form to re-Mirandize Appellant and took a statement from him. At the pretrial motion hearing, Detective Morrow testified that he "read his rights to him a couple of times."

During the interview, before Appellant's confession, the following colloquy took place:

> MORROW: O.k., James when . . . ah . . . when I read you your rights . . . ah . . . you said you wanted your attorney present . . . I give you an opportunity to . . . to . . . to tell me who your attorney was so we could get him up here . . . Is that correct?

> WEDGEWORTH: Yes sir.

> MORROW: At that time you told me you didn't have one but you wanted to go ahead and speak to me, is that correct?

> WEDGEWORTH: Yes sir.

> MORROW: O.k., you wasn't forced to give me . . . to talk to me or anything like that was you?

> WEDGEWORTH: No sir.

After Appellant confessed to shooting the victim with a twenty-gauge shotgun, the following colloquy took place:

> MORROW: And you . . . you . . . you understand you had the right to talk to a lawyer before any questions were asked . . . you may have had one present . . . you understood that?

> WEDGEWORTH: Yes sir.

> MORROW: O.k. if you couldn't afford one . . . one would be appointed to represent you free of cost . . . you understood that . . . that correct?

WEDGEWORTH: Yes sir.

MORROW: O.k., as I said earlier ... when I started talking to you ... you said you wanted your attorney ... but you didn't have ... you ... you didn't you didn't have an attorney and you ... you choose to go ahead and speak to me of your own free will ... is that correct?

WEDGEWORTH: Yes ... I did not know of a name of an attorney right off hand.

MORROW: So ... did I threaten you for you[r] statement?

WEDGEWORTH: No sir.

MORROW: Did I make you any promises for your statement?

WEDGEWORTH: No sir.

MORROW: O.k., your statement made of your own free will?

WEDGEWORTH: Yes sir.

On August 5, 2005, a criminal information was filed charging Appellant with the capital murder of Megan Harbison. On August 3, 2006, Appellant filed a motion to suppress, alleging that El Dorado police "conducted an illegal custodial interrogation of the defendant after the defendant made an unambiguous request for legal counsel and before counsel was provided in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Arkansas." The circuit court entered an order on August 4, 2006, denying Appellant's motion to suppress. The circuit court ruled that "the defendant was advised he had the right to counsel, implied he wanted his counsel but could not remember his name, and then did not ask for alternate counsel, did not ask to call his family or ask for a court-appointed attorney when asked what he wanted to do." The circuit court found that Appellant understood his rights and voluntarily and intelligently waived his right to have counsel present.

A jury found Appellant guilty and sentenced him to life imprisonment without parole. A judgment and commitment order was filed on August 17, 2006. Amended orders were filed on

August 21, 2006, and September 5, 2006. On August 30, 2006, Appellant filed his notice of appeal.

For his sole point on appeal, Appellant argues that the circuit court erred in denying his motion to suppress and in allowing evidence to be introduced at trial that was allegedly obtained in violation of his Fifth Amendment right to counsel. Specifically, Appellant contends that his right to counsel was violated when he continued to be interrogated by a police officer when he requested to have an attorney present. Appellant asserts that he clearly invoked his Fifth Amendment right to counsel and that he did not initiate further communication with Detective Morrow.

In response, the State argues that the circuit court properly denied Appellant's motion to suppress his custodial confession. The State concedes that it is undisputed that Appellant invoked his right to counsel after being advised of his *Miranda* rights and that Detective Morrow, rather than Appellant, initiated contact. The State asserts the detective's post-invocation communications with Appellant did not amount to a re-initiation of an interrogation, but rather Appellant's communication with Detective Morrow amounted to a self-incriminating statement.

In *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), we clarified the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession: We make an independent determination based upon the totality of the circumstances. *Id.* We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

The narrow issue is whether the detective interrogated Appellant after initiating contact with him. Both the Fifth and Sixth Amendments provide a right to counsel. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). Under the Fifth Amendment, the right to counsel is derived from the amendment's prohibition against self-incrimination while in custody. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Once a defendant invokes his Fifth Amendment right to counsel at a custodial interrogation, the police may not interrogate any further until counsel is provided, or the defendant initiates further communication. *Michigan v. Jackson*, 475 U.S. 625 (1986).

In *Robinson v. State*, 373 Ark. 305, 283 S.W.3d 558 (2008), we stated that once a defendant is read his or her *Miranda* rights, the

relevant inquiry is whether a defendant's initial response "indicated in any manner" under *Miranda* and Arkansas Rule of Criminal Procedure 4.5 an invocation of the right to remain silent or an invocation of the right to counsel. If so, the interrogation must immediately cease whenever the suspect states that he or she wants counsel, *Miranda*, 384 U.S. at 474, or when he or she invokes the right to remain silent, pursuant to *Miranda* and Rule 4.5. In *Robinson*, *supra*, we noted that neither the record reflected nor the State argued the existence of a waiver.[1]

However, an accused may waive her rights by initiating further communication with the police. *Jackson*, 475 U.S. at 636. If an accused waives his or her rights and initiates further communication, exchanges, or conversation with police officers, after initially requesting an attorney before speaking, any resulting statements may be admissible. *Vidos*, *supra* (citing *Edwards v. Arizona*, 451 U.S. 477 (1981)). An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.*

With this precedent in mind, we turn to the present case. In its order, the circuit court wrote: "The court finds this to be a very close question. However, the defendant was advised he had the right to counsel, implied he wanted his counsel but could not remember his name, and then did not ask for alternate counsel, did not ask to call his family or ask for a court-appointed attorney when asked what he wanted to do." Here, the facts show that Detective Morrow testified that he read Appellant his rights and specifically told him that he had a right to have a lawyer present. Appellant indicated that "he wanted his lawyer present" but could not identify who his attorney was. Detective Morrow told Appellant that he "would leave the room for a little bit, give him some time to think, [and] maybe remember who his attorney was." After five to ten minutes, Detective Morrow returned to the room, asked Appellant if he recalled his attorney's name, and Appellant said "he did not." Detective Morrow then asked Appellant "what he wanted to do," and according to the detective, Appellant "said he wanted to provide the statement." Detective Morrow asked, "Even without an attorney?" Appellant replied, "Yes." The

---

[1] We note that neither party argues Rule 4.5 in this case.

detective then read his rights again, using the same form, and took Appellant's taped statement. Detective Morrow testified that Appellant signed a Miranda form, which Detective Morrow signed and dated July 16, 2005, at 0350 hours. Appellant signed the form and dated it July 16, 2005, at 4:00 a.m. It is unclear from Morrow's testimony when exactly Appellant signed the Miranda form.

Here, Appellant asked for his attorney, a clear invocation of his right to counsel. The State concedes that Detective Morrow initiated contact following a five to ten minute break taken to give Appellant the opportunity to remember his attorney's name. Though the State argues waiver and that the two questions by Detective Morrow were not interrogation, it is clear that Appellant's confession was taken after the invocation of right to counsel and before either counsel was present or Appellant initiated further conversation, as required by *Vidos, supra.*

Because the *Vidos* prerequisites were not met, we hold that Appellant's right to counsel was violated. Therefore, it was error for the circuit court to admit the confession. Pursuant to Arkansas Supreme Court Rule 4-3(h) (2008), the record in this case has been reviewed for all other objections, motions, and requests made by either party, which were decided adversely to Appellant, and no prejudicial error has been found. *See Robinson, supra.*

Reversed and remanded.

BROWN and DANIELSON, JJ., concur.

WILLS, J., not participating.

ROBERT L. BROWN, Justice, concurring. I concur in the reversal and write only to underscore why the interrogation violated *Miranda* even though Wedgeworth was advised of his rights three times. He was advised prior to the taped interrogation and signed a waiver-of-rights form. He was advised again at the beginning of the taped interrogation and then a third time at the end of the interrogation. Nevertheless, because of his stated confusion over his right to counsel, I agree to reverse.

As the majority correctly asserts, the police may properly interrogate a suspect in custody after he invokes his Fifth Amendment right to counsel only if the suspect initiates communication with the police and knowingly, intelligently, and voluntarily waives that right. *See, e.g., Brussard v. State,* 295 Ark. 296, 239 S.W.2d 71 (1988). The parties framed the issue in the instant case,

in part, as whether the detective's question, "So what do you want to do?" was an interrogation. However, the taped conversation admitted at trial was clearly an interrogation, so the real issue is whether, prior to making those statements, Wedgeworth initiated contact with the police and validly waived his right to counsel.

The statements of both the detective and Wedgeworth in the instant case indicate that the appellant was confused about the nature of his right to counsel. First, the detective's actions in response to Wedgeworth's request for counsel cast doubt on whether he understood his rights. If the detective implied that the appellant could have an attorney present only if he could recall one's name, it is difficult to conclude that Wedgeworth agreed to talk out of free and deliberate choice. Furthermore, the appellant's own statements during the interrogation indicate a lack of understanding about the nature of his right to counsel.

At the beginning of the taped interrogation, Detective Morrow said to the defendant, "O.K., James when . . . Ah . . . When I read you your rights . . . Ah . . . You said you wanted your attorney present . . . I give [sic] you an opportunity to . . . to . . . to tell me who your attorney was so we could get him up here . . . is that correct?" Wedgeworth responded affirmatively. Then the detective said, "At that time you told me you didn't have one but you wanted to go ahead and speak to me, is that correct?" Again, the appellant answered, "Yes sir." Then, following the interrogation, the detective said to Wedgeworth, "O.K., As I said earlier . . . when I started talking to you . . . you said you wanted your attorney . . . but you didn't have . . . you . . . you didn't you didn't have an attorney and you . . . you choose [sic] to go ahead and speak to me of your own free will . . . is that correct?" The appellant then responded: "Yes . . . I did not know of a name of an attorney right off hand."

These exchanges support Wedgeworth's assertion that he believed he was entitled to have counsel present only if he could think of the name of a lawyer. While the detective testified that he advised the appellant that he had the right to an attorney even if he could not afford one, he did not testify that he explained to Wedgeworth that he was entitled to an attorney even if he did not know one by name. In fact, the detective's actions could reasonably be interpreted to imply the opposite.

In short, I believe Wedgeworth could have made a statement after the detective reentered the room, had he fully understood his rights. But, again, the record indicates that he did not.

Because the record leads me to believe that the defendant may well have thought that, if he could not think of his own attorney's name, he had no right to counsel, I agree to reverse.

PAUL E. DANIELSON, Justice, concurring. I concur in the decision reached by the majority in this case; however, I write to clarify the law on the issue of post-invocation contact with an individual in custody. In the instant case, it is undisputed by the parties that Wedgeworth invoked his right to counsel after being advised of his *Miranda* rights. Therefore, the issue is whether Detective Morrow's post-invocation contact with Wedgeworth was appropriate or if it constituted further interrogation.

A person subject to custodial interrogation must first be informed of his right to remain silent and right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966). If after having been advised of the *Miranda* rights, a criminal defendant states that he wants an attorney, the interrogation must cease until an attorney is present. *Id.* at 474. The individual must have an opportunity to confer with the attorney and to have the attorney present during any subsequent questioning. *Id.* If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent. *Id.* This holding in *Miranda, supra,* is reflected in Rule 4.5 of the Arkansas Rules of Criminal Procedure, which provides: "No law enforcement officer shall question an arrested person if the person has indicated in any manner that he does not wish to be questioned, or that he wishes to consult counsel before submitting to any questioning."

The United States Supreme Court has stated:

> To ensure that officials scrupulously honor this right, we have established in *Edwards v. Arizona*, [451 U.S. 477 (1981)], and *Oregon v. Bradshaw*, [462 U.S. 1039 (1983)], the stringent rule that an accused who has invoked his Fifth Amendment right to assistance of counsel cannot be subject to official custodial interrogation unless and until the accused (1) "initiates" further discussions relating to the investigation, and (2) makes a knowing and intelligent waiver of the right to counsel under the [waiver] standard of *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and its progeny. *See Solem v. Stumes*, 465 U.S. 638 (1984).

*James v. Arizona*, 469 U.S. 990, 992 (1984).

Statements improperly taken after the invocation of the right to remain silent or the right to counsel must be excluded from the State's case in chief to ensure compliance with *Miranda*. *See Michigan v. Harvey*, 494 U.S. 344 (1990). *Miranda* instructs, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475. This high bar on the State's burden of proving waiver of the right to remain silent is best understood as a result of the view that courts are to "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Michigan v. Jackson*, 475 U.S. 625, 633 (1986) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In the instant case, Wedgeworth did not initiate further discussion relating to the investigation before Detective Morrow did. While Detective Morrow did ask Wedgeworth if he recalled the name of his attorney, that question did not turn the focus of the conversation back to the investigation. However, Detective Morrow's question of "What do you want to do?" most certainly did.

Merely because the question taken out of context does not appear to be a question used in interrogation, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words *or actions* on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted) (emphasis added). When Detective Morrow asked Wedgeworth what he wanted to do after he could not provide the name of an attorney, Wedgeworth was left with only two options: to go ahead and speak without an attorney present, or to again invoke his right to counsel and specifically request that an attorney be appointed for him. Here, Detective Morrow even testified that when he asked Wedgeworth that question, he meant "do you want to talk or do you want to go on to jail?" The right to counsel is not contingent upon a criminal defendant being able to tell the police the name of an attorney, and a criminal defendant is certainly not required to invoke the right twice. The right to counsel is invoked if a criminal defendant "indicates in any manner" that he wants an attorney present. *Miranda v. Arizona*, 384 U.S. 436, 473-74.

Furthermore, Wedgeworth's statements in no way equated a waiver of his right to counsel before his recorded statement was taken. In *Johnson v. Zerbst*, 304 U.S. 458 (1938), the United States Supreme Court discussed the waiver of right to counsel and stated:

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

304 U.S. at 464. This case is hardly an example where the defendant intentionally relinquished or abandoned his right to counsel. Wedgeworth clearly invoked the right, but was then asked twice to give a name of an attorney. After Wedgeworth could not comply, Detective Morrow implied that it was his responsibility to do so by asking him what he wanted to do.

This court looks to see if a confession was the product of free and deliberate choice rather than intimidation, coercion, or deception in order to determine whether a waiver of *Miranda* rights was voluntary. *See Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). Here, as already noted, Detective Morrow implied that in order to invoke his right to counsel, Wedgeworth had to provide the name of an attorney.

For all these reasons, Detective Morrow's post-invocation contact with Wedgeworth violated his right to counsel and, therefore, I concur in the decision to reverse and remand.