2010 Ark. 357

**Myka TALLEY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–833.**

Supreme Court of Arkansas.

Sept. 30, 2010.

Rehearing Denied Oct. 28, 2010.

Jason Lee Horton, Texarkana, AR, for appellant.

Dustin McDaniel, Atty. Gen., Christian Harris, Little Rock, for appellee.

RONALD L. SHEFFIELD, Justice.

This appeal arises from the conviction and sentence of appellant Myka Talley in Miller County Circuit Court for seven counts of rape and one count of kidnapping. Talley was convicted by a jury and sentenced to serve eight consecutive life sentences. On appeal, he claims that the circuit court erred in denying his motion to suppress DNA evidence allegedly obtained in violation of his Fifth Amendment right to counsel and right to remain silent; that his consent to the DNA test was coerced through police violations of his Fifth Amendment right to counsel and right to remain silent; and that the circuit court erred in allowing two police officers to testify at trial as to comments made by the victim. Because this is a capital case involving a sentence of life in prison, our jurisdiction is pursuant to Rule 1–2(a)(2) of the Rules of the Arkansas Supreme Court. We affirm.

### I. *The DNA Evidence*

On the night of July 4, 2008 and into the morning hours of July 5, 2008, a woman was repeatedly and violently assaulted and raped in her home by an intruder who held her against her will. She eventually escaped and fled across the street where she was able to call the police. A subsequent investigation led police to arrest Talley. He was taken to an interrogation room and was given a *Miranda* rights form. Talley acknowledged that he understood his rights but refused to sign a waiver of those rights. He then invoked his

right to remain silent.[1]

Police then ceased asking Talley about the crime but did ask him to submit to a DNA test. Talley remained silent and did not respond. After the police requested a DNA sample two more times, he responded, "Y'all are going to get it anyway, right?" Police then took a buccal swab from Talley's mouth. A comparison of DNA collected from the victim with the sample obtained from Talley determined within all scientific certainty that the DNA was a match.[2]

Prior to trial, on March 17, 2009, Talley filed a motion to suppress the buccal swab, and the subsequent test results, alleging that they were obtained in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding Articles under the Arkansas Constitution. Talley also argued that any DNA results should be suppressed as tainted "fruits" of those violations. At a March 23, 2009 suppression hearing, Talley argued that by continuing to interrogate him after he invoked his right to counsel and right to remain silent, the police coerced him into consenting to a DNA sample.

On appeal, Talley relies on Arkansas Rule of Criminal Procedure 4.5, which states that "[n]o law enforcement officer shall question an arrested person if the person has indicated in any manner that he does not wish to be questioned, or that he wishes to consult counsel before submitting to any questioning." Ark. R.Crim. P. 4.5 (2010). Talley further cites *Wedge-*

worth v. State, for the proposition that "[o]nce a defendant invokes his Fifth Amendment right to counsel at a custodial interrogation, the police may not interrogate him further until counsel is provided, or until the defendant initiates further communication." 374 Ark. 373, 377, 288 S.W.3d 234, 237 (2008).

The circuit court denied the motion to suppress, finding that: (1) a request for, and the taking of, a DNA sample is not a violation of the Fifth Amendment; (2) the appellant's consent to the DNA sample was voluntary under the totality of the circumstances; and (3) the DNA evidence would have been inevitably discovered during the course of the investigation due to the overwhelming probable cause that had been established.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances and will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *See, e.g., Koster v. State,* 374 Ark. 74, 86, 286 S.W.3d 152, 163 (2008).

Talley had invoked his right to counsel and his right to remain silent. The question is whether, by requesting a DNA sample from the appellant, the police continued the interrogation for purposes of the Fifth Amendment. We hold that they did not.

The police request for a DNA sample did not constitute continued inter-

1. Talley also stated, "I can speak to counsel, right?" While this statement is not an unequivocal invocation of the his right to counsel, *see Baker v. State,* 363 Ark. 339, 214 S.W.3d 239 (2005) (citing *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)), a note made by police on the rights form acknowledges that he asked for an attorney. The State does not challenge the invocation of the right to counsel on appeal. Thus, for purposes of this court's analysis of the interrogation we will proceed as if Talley unequivocally invoked his right to counsel.

2. The expert witness testified that the exact DNA profile was expected to be seen in 1 in 8,600,000,000,000,000,000 persons.

rogation under *Miranda*. Interrogation, for purposes of *Miranda* protections, means express questioning or any words or actions by the police that the police should have known are reasonably likely to elicit an incriminating response. *State v. Pittman*, 360 Ark. 273, 278, 200 S.W.3d 893, 897 (2005); *see also Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). A request for a DNA sample is neither express questioning in relation to an investigation nor does it constitute words or actions by police that are reasonably likely to elicit an incriminating response. This is true for two reasons. First, a request for DNA is not reasonably likely to elicit incriminating statements, but rather is an effort to obtain consent for a physical test. *See Pittman*, 360 Ark. at 278, 200 S.W.3d at 897. A police request for DNA does not call for any verbal response aside from a yes or no. Second, although the results of a DNA test can be incriminating, they are the results of a demonstrative, physical test and are not testimony or a communicative act. *See Moore v. State*, 323 Ark. 529, 537–38, 915 S.W.2d 284, 289 (1996).

The Fifth Amendment does not independently prevent the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make testimonial statements or communicative acts. *Id.* at 537, 915 S.W.2d at 289. We have declined to extend the protection of the privilege to the collection of blood samples, *see Burmingham v. State*, 342 Ark. 95, 111, 27 S.W.3d 351, 361 (2000); *Moore*, 323 Ark. at 537–38, 915 S.W.2d at 289; *see also Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), or handwriting samples, *Pittman*, 360 Ark. at 278, 200 S.W.3d at 897; *see also Gilbert v. California*, 388 U.S. 263, 265–67, 87 S.Ct. 1951, 1952–54, 18 L.Ed.2d 1178 (1967).

In *Pittman,* we held that a police officer did not violate a suspect's Fifth Amendment rights when, after the suspect invoked his *Miranda* rights, the officer requested, and obtained, a hand writing sample. *Pittman,* 360 Ark. at 278, 200 S.W.3d at 897. This court held that the test was not testimonial in nature and was not protected by the Fifth Amendment. *Id.,* 200 S.W.3d at 897. This court also held that a request for a handwriting sample was not reasonably likely to elicit an incriminating response. *Id.,* 200 S.W.3d at 897.

Furthermore, the Fifth Amendment right against self-incrimination is not violated by the taking of a DNA sample. The taking of a DNA sample, although potentially incriminating, is neither testimony nor does it lead to a communicative act. Rather, swabbing to obtain DNA is a demonstrative, physical test which does not implicate the Fifth Amendment. *Moore,* 323 Ark. at 537, 915 S.W.2d at 289.

Here, Talley invoked his right to counsel and right to remain silent. There is no argument made that the appellant waived any of these rights. But a request to obtain a DNA sample is not a violation of the appellant's right to counsel or right to remain silent. For this reason, we hold that the police did not violate Talley's Fifth Amendment rights, and the circuit court did not err in denying his motion to suppress the DNA evidence.

Talley next argues that his alleged consent to DNA sampling was, under the totality of the circumstances, involuntary. Appellant claims that his consent was coerced because the interrogation continued after he invoked his right to counsel and right to remain silent. When reviewing cases involving a trial court's ruling on the voluntariness of a confession, this court makes an independent determination based upon the totality of the circum-

stances. *Wedgeworth,* 374 Ark. at 377, 288 S.W.3d at 237.

We have already held that the police request for a DNA sample was not a continuation of the interrogation under the Fifth Amendment. In light of this holding, Talley's argument in connection with continued interrogation is without merit. Aside from his Fifth Amendment argument, Talley has not developed any other argument and has cited no additional case law to support his assertion that the police conduct was coercive. We have frequently stated that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Strong v. State,* 372 Ark. 404, 419, 277 S.W.3d 159, 170 (2008). We thus affirm the circuit court's finding that the consent was voluntary.

Last, Talley argues that the circuit court erred in alternatively holding that the inevitable-discovery exception to the exclusionary rule would apply in this case. Talley contends that the State did not establish by a preponderance of the evidence that the DNA evidence inevitably would have been discovered by lawful means. Because we affirm the circuit court's primary grounds for denying the appellant's motion, we decline to address this issue.

## II. *The Police Testimony*

At trial, the State called two police officers to testify as to what the victim had told them. Talley objected, arguing that the witnesses' testimony was inadmissable hearsay. The State responded that the testimony fell under the "excited-utterance" exception found in Arkansas Rule of Evidence 803(2), which states: "The following are not excluded by the hearsay rule, even though the declarant is available

as a witness ... (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ark. R. Evid. 803(2) (2010). Talley seeks reversal on the ground this was error.

The State argues that the testimony fell under the excited-utterance exception. The State notes that police testified that they first encountered the victim in responding to a 9–1–1 call. They described her as being visibly disturbed. According to the State this non-hearsay background was sufficient to support the circuit court's decision to allow the testimony.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rodriguez v. State,* 372 Ark. 335, 337, 276 S.W.3d 208, 211 (2008). Moreover, we will not reverse absent a showing of prejudice. *Id.,* 276 S.W.3d at 211.

The circuit court did not abuse its discretion in allowing the testimony because the statements made by the victim qualify as excited-utterances under the five-factor test used in *Rodriguez v. State,* 372 Ark. at 337, 276 S.W.3d at 211. These factors are (1) the lapse in time between the event and the statement; (2) the age of the declarant; (3) the declarant's physical and mental condition; (4) the characteristics of the event; and (5) the subject matter of the statement. *Id.* at 337, 276 S.W.3d at 211. To be an excited utterance, the statement must appear to be spontaneous, excited, or impulsive, rather than the product of reflection and deliberation. *Id.* at 337, 276 S.W.3d at 211.

Talley does not dispute that the victim was excited. She had just been

violently assaulted with a knife and raped orally, anally, and vaginally repeatedly for many hours. The victim only escaped after her attacker fell asleep while still wrapped around her. She ran next door and immediately called 9–1–1. The police who testified at trial stated that they arrived to find the victim shaken up, crying, and very upset. The nature of the attack was horrific, brutal, and unrelenting. The attack took place while the victim's eleven-month-old child lay nearby. Under these circumstances, we cannot say the circuit court abused its discretion in holding that the victim's statements to the police were excited-utterances. We thus affirm the circuit court on this point.

Talley further argues that the testimony of the two officers was prejudicial because it permitted the officers to "give a graphic description of the victim's upcoming testimony." The appellant asserts that the testimony "did nothing but bolster the testimony of the victim." The appellant did not raise this issue at the trial and any arguments made subsequently were not preserved for appeal. This court will not consider an issue raised for the first time on appeal. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006); *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006).

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2010), the record in this case has been reviewed for all other objections, motions, and requests made by either party, which were decided adversely to the appellant, and no prejudicial error has been found.

Affirmed.