Cite as 2024 Ark. App. 69

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-23-321

| | |
|---|---|
| JEFFERY MATLOCK<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** January 31, 2024<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR-22-75]<br><br>HONORABLE STEPHEN L. SHIRRON, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Jeffery Matlock was found guilty by a Hot Spring County Circuit Court jury of possession of a firearm by certain persons, second-degree domestic battery, and first-degree terroristic threatening. He was sentenced to a twenty-nine-year term of incarceration in the Arkansas Department of Correction.[1] On appeal, Matlock argues that the circuit court erroneously admitted hearsay statements. We find no error and affirm.

On February 26, 2022, Matlock was charged by information as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501[2] with the offenses of kidnapping under Arkansas Code

---

[1]Matlock was sentenced to serve consecutive terms of incarceration of seventeen years, six years, and six years, respectively.

[2](Supp. 2023).

Annotated section 5-11-102,[3] a Class Y felony; possession of firearms by certain persons under Arkansas Code Annotated section 5-73-103,[4] a Class B felony; domestic battering in the second degree under Arkansas Code Annotated section 5-26-304,[5] a Class C felony; theft of property (car) under Arkansas Code Annotated section 5-36-103,[6] a Class C felony; theft of property (credit card) under Arkansas Code Annotated section 5-36-103, a Class D felony; aggravated assault of a family or household member under Arkansas Code Annotated section 5-26-306,[7] a Class D felony; terroristic threatening in the first degree under Arkansas Code Annotated section 5-13-301,[8] a Class D felony; and fraudulent use of a credit card under Arkansas Code Annotated section 5-37-207,[9] a Class D felony.

Officer Josh Killian of the Malvern Police Department testified that on February 21, 2022, he responded to a 911 call of a trespass in progress. Upon arrival, Officer Killian encountered Carla Thompson and Matlock in a heated disagreement. Thompson expressed that she wanted Matlock to leave her home. Matlock explained that he resided in the residence. Because he was able to establish

---

[3](Repl. 2013).

[4](Supp. 2023).

[5](Supp. 2023).

[6](Supp. 2023).

[7](Supp. 2023).

[8](Supp. 2023).

[9](Repl. 2013).

residency, Matlock was not removed from the property. Officer Killian informed Thompson that she would have to follow proper eviction procedures to remove Matlock from the home.

Thompson's neighbor, Raquel James, testified that the next afternoon, Thompson banged on her door screaming for help. Thompson was barefoot, had handcuffs on one hand, her face was bloody, and she pleaded for help, saying, "He's got a gun, he's going to kill me." James testified that Thompson appeared to be truly terrified. James saw a man standing outside of Thompson's house and then saw that same man speed away in a gray car. James stated that she called 911 for help.

Officer Jack Seely, a detective with the Malvern Police Department, testified that he responded to the "assault not in progress" call. When he arrived on scene, Officer Seely saw a visibly upset Thompson outside the home wearing no shoes or jacket, despite the cold temperatures. Thompson had dried blood above her left eyebrow, and on her left wrist was a set of red handcuffs. Officer Seely testified that Thompson provided the following verbal statement:

> She advised after the officers left the night prior on the 21st, I believe, that Jeffery Matlock had assaulted her, kept her from leaving her house, threatened to kill her with her gun, attempted to set the house on fire. He eventually had fallen asleep, she was able to run out of the house, run to the neighbor's house, beat on the door long enough for the people to call 9-1-1. She advised me that while she was outside the house, that Mr. Matlock observed her at the house, went back in, I guess, to her house, and left shortly after in a — — her Hyundai Tuscon, and she believed that he had — — she — — still — — or he still had her gun when he left.

Photographs depicting dried blood above Thompson's eye and bruising on her hands were introduced into evidence without objection after Officer Seely confirmed the pictures accurately represented Thompson's physical condition at the scene.

Detective Curtis Kyle, the lieutenant of the criminal-investigation division of the Malvern Police Department, testified that on February 25, information was received regarding Matlock's

whereabouts. Officers responded to the residence and discovered Matlock hiding behind a blanket in the corner of the laundry room, near the back door. Matlock was arrested and taken into custody.

Prior to trial, the State filed a motion in limine to use evidence pursuant to Arkansas Rule of Evidence 803(24). The motion claimed Thompson testified during a bond hearing that she fabricated the allegations against Matlock. However, after the February 21–22 incident, Thompson signed and submitted a sworn affidavit seeking a protection order against Matlock. In the affidavit, Thompson alleged that Matlock pushed and shoved her, dragged her down the hall by her hair, choked her, handcuffed her, and threatened to kill her. Thompson's affidavit also stated that Matlock "proceeded to cuddle with [her]" while he held a gun to her ribs. The State sought to use the affidavit in the event Thompson took the stand and disclaimed the allegations. Following a hearing on the State's motion, the circuit court found the affidavit admissible as evidence of a material fact, no other evidence on point was available through reasonable efforts, and the interest of justice would best be served by admitting the affidavit.

The State filed another motion in limine seeking to admit Thompson's out-of-court statements to her neighbor, James, and Detective Seely. After another hearing, the circuit court found the statement Thompson made to James admissible under the excited-utterance hearsay exception. The circuit court found Thompson's statement to Detective Seely at the scene admissible because she made the statement while "under duress and making statements based on her emotional circumstances" and it was further admissible under "multiple exceptions" to the general rule against the admission of hearsay.

At trial, as detailed previously, both James and Detective Seely testified to the statements made by Thompson immediately after her encounter with Matlock. Nonetheless, Thompson took

the stand and repudiated the allegations against Matlock. Thompson insisted that she lied when she made the statements because she was mad and hurt that Matlock was leaving her for another woman. Thompson testified that Matlock did not hit, choke, or push her. She stated that he did not drag her by her hair and that she placed the handcuff on herself. Thompson testified that she hired Matlock's defense attorney "'[c]ause it was the right thing to do, 'cause what I had done was wrong and I felt guilty for what I had done. I needed to make it right."

The jury found Matlock guilty of possession of a firearm by certain persons, second-degree domestic battery, and first-degree terroristic threatening and sentenced him to serve consecutive terms of incarceration of seventeen years, six years, and six years, respectively, for a total term of twenty-nine years imprisonment.[10] Matlock now appeals his convictions.

A circuit court has broad discretion in deciding evidentiary issues.[11] We will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion and a showing of prejudice.[12] Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.[13]

---

[10]Matlock was acquitted of kidnapping and aggravated assault of a family or household member. The theft-of-property charges and the fraudulent-use-of-a-credit-card charge were nolle prossed.

[11]*Washington v. State*, 2019 Ark. App. 224, 575 S.W.3d 626.

[12]*Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999).

[13]*Washington*, *supra*.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted.[14] Hearsay is not admissible unless it meets an exception provided by law or by the rules of evidence.[15]

On appeal, Matlock challenges the circuit court's decision to admit into evidence three out-of-court statements: (1) Thompson's statement to her neighbor; (2) Thompson's statement to Detective Seely; and (3) Thompson's affidavit in support of her petition for a protective order against Matlock. Matlock contends that each statement constituted hearsay that does not meet any exception to the general rule against hearsay admission.

At the outset, we note that although Matlock purports to challenge the circuit court's admission of three separate statements, he fails to develop any discernible argument regarding Thompson's statements to her neighbor and to law enforcement, particularly, Detective Seely. Instead, his argument on appeal focuses on Thompson's affidavit accompanying her protective-order petition. We do not consider an argument when the appellant presents no convincing argument in its support.[16]

Out of caution, despite Matlock's failure to craft an argument on the issues, we note that the circuit court did not abuse its broad discretion by admitting Thompson's statements to her neighbor and Detective Seely. An excited utterance is a statement relating to a startling event or condition

---

[14]Ark. R. Evid. 801(c).

[15]Ark. R. Evid. 802.

[16]*Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

made while the declarant was under the stress of excitement caused by the event or condition.[17] The relevant inquiry is whether the statement was made under the stress of excitement or was made after the declarant calmed down and had an opportunity to reflect, which is a matter within the circuit court's sound discretion.[18] Thompson's statement to her neighbor was made immediately following her escape from Matlock, where she had been handcuffed, attacked, held at gunpoint, and repeatedly told she was going to die. James testified that when Thompson banged on her door, she (Thompson) was screaming, pleading for help, visibly upset, and scared. Thompson's statement to her neighbor was properly admitted as an excited-utterance exception to hearsay.

Likewise, Thompson's statement to Detective Seely was also properly admitted into evidence as an excited utterance. Admissibility is not to be measured by any precise number of minutes, hours, or days but requires that the declarant is still under the stress and excitement caused by the event.[19] The court looks at the lapse of time between the event and the statement, the age of the declarant, the declarant's physical and mental condition, the characteristics of the event, and the subject matter of the statement.[20] Thompson's statement to Detective Seely was made soon after she freed herself from handcuffs and fled to her neighbor's home begging for help. Thompson was still barefoot, bloody, and distraught from the hours of being terrorized by Matlock. Thompson was still under the stress of the traumatic event when she provided a statement to law enforcement.

---

[17]Ark. R. Evid. 803(2).

[18]*Ludwick v. State*, 2021 Ark. App. 347, 635 S.W.3d 330.

[19]*Ludwick*, *supra*.

[20]*Talley v. State*, 2010 Ark. 357, 377 S.W.3d 222.

7

Matlock contends that the circuit court abused its discretion in admitting into evidence the statement Thompson made when she filed for a protective order. Essentially, he alleges that the statement was hearsay and was made in preparation for a court proceeding and has "no guarantees of trustworthiness." Matlock argues that Thompson's ultimate dismissal of the protective order serves as proof of the falsity and unreliability of the statement. Matlock urges that Thompson's retraction of the allegations in the protective-order affidavit are compelling indications that Thompson was lying when she made the statement and allegations contained therein.

A statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement; and the statement is inconsistent with her testimony and, if offered in a criminal proceeding, was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.[21] There is no dispute that Thompson's affidavit in support of her petition for an order of protection was made under oath, as required by the statutes governing protection orders.[22] Furthermore, Thompson testified at Matlock's trial and was subject to cross-examination. Accordingly, Thompson's affidavit was not hearsay and was not subject to exclusion under hearsay rules.

Affirmed.

GRUBER and THYER, JJ., agree.

*Gregory Crain*, for appellant.

*Tim Griffin, Att'y Gen., by: Walker K. Hawkins*, *Ass't Att'y Gen., for appellee.*

---

[21]Ark. R. Evid. 801(d)(1).

[22]*See* Ark. Code Ann. § 9-15-201(e)(2) (Repl. 2020).