**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0229**

State of Minnesota,
Respondent,

vs.

Erik John Heinonen,
Appellant.

**Filed January 30, 2017**
**Affirmed**
**Hooten, Judge**

Sherburne County District Court
File No. 71-CR-15-713

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Daniel N. Rehlander, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hooten, Judge.

**S Y L L A B U S**

Because a request that a suspect consent to provide a DNA sample does not constitute interrogation under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), and DNA evidence is not testimonial or communicative in nature, a police officer does not violate a suspect's Fifth Amendment rights by asking for such consent after the suspect has invoked his or her right to remain silent.

**O P I N I O N**

**HOOTEN**, Judge

On appeal from his convictions of possessing a short-barreled shotgun and being a prohibited person in possession of a firearm, appellant argues that the district court erred by denying his motion to suppress statements he made to law enforcement and the DNA sample he provided. We affirm.

**FACTS**

On June 1, 2015, law enforcement officers executed a search warrant at a residence. The homeowner was the target of the search warrant. After encountering and handcuffing the homeowner at the entry to the house, the officers were charged by a large dog, which they were able to subdue. As the officers continued walking through the house, they encountered and handcuffed two more occupants, appellant Erik John Heinonen and another man. After determining that the house was secure but before searching the house, an officer told Heinonen and the other occupants that they were not under arrest. The officers then asked all three occupants to provide their full names and dates of birth and to identify where they had been when the officers entered the house. Heinonen provided his full name and date of birth and indicated that he had emerged from the upstairs southwest bedroom. While other officers were searching the house, an officer brought Heinonen out to the squad car, where he was read a *Miranda* warning.[1] Heinonen invoked his right to

---

[1] *Miranda* "prohibits the admission in evidence of statements made by a suspect during custodial interrogation absent procedural safeguards to protect the suspect's rights under the Fifth Amendment." *State v. Tibiatowski*, 590 N.W.2d 305, 308 (Minn. 1999) (quotation

remain silent, and the officer ceased his questioning and escorted Heinonen back into the house.

During their search of the residence, the officers recovered shotgun shells and a short-barreled shotgun from the southwest bedroom. The officers discovered that Heinonen was prohibited from possessing a firearm and arrested him. After Heinonen was transported to the jail, officers approached him to request his consent for a DNA swab, but did not reread the *Miranda* warning. Heinonen signed a consent form and volunteered that he had touched the firearm. Heinonen's DNA was found on the firearm, and he was charged with possession of a short-barreled shotgun and being a prohibited person in possession of a firearm.

Heinonen moved to suppress the statements he made to law enforcement, as well as the DNA sample he provided, and the district court denied the motion. Prior to trial, Heinonen stipulated that he was prohibited from possessing a firearm. A jury found Heinonen guilty of both counts. This appeal followed.

## ISSUES

I.      Did the district court err by refusing to suppress Heinonen's statements to the officers at the residence?

II.     Did the district court err by concluding that Heinonen was not interrogated when the officers requested his consent for a DNA sample?

---

omitted). The required procedural safeguards are commonly referred to as a *Miranda* warning.

3

**ANALYSIS**

**I. Because Heinonen was neither in custody nor subject to interrogation when the officers initially questioned him, the district court properly denied Heinonen's motion to suppress his statements to the officers at the residence.**

Heinonen argues that the district court erred in failing to suppress his statement identifying his bedroom because such statement was made in response to the officers' questioning of him while he was in custody and before he was provided with a *Miranda* warning. We disagree.

*Miranda* provides procedural safeguards to protect an individual's Fifth Amendment privilege against self-incrimination. 384 U.S. at 478–79, 86 S. Ct. at 1630. "'On-the-scene' questioning, where the officers are simply trying to get a preliminary explanation of a confusing situation, does not require a *Miranda* warning." *State v. Walsh*, 495 N.W.2d 602, 604–05 (Minn. 1993). However, "[s]tatements made by a suspect during a 'custodial interrogation' are admissible only if the statement was preceded by a *Miranda* warning. Thus, a *Miranda* warning is required if a suspect is both in custody and subject to interrogation." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010) (citations and quotation omitted).

An individual is in custody "if, based on all the surrounding circumstances, a reasonable person under the circumstances would believe that he or she was in police custody of the degree associated with formal arrest." *Id.* (quotation omitted).

> Factors indicative of custody include (1) the police interviewing the suspect at the police station; (2) the suspect being told he or she is a prime suspect in a crime; (3) the police restraining the suspect's freedom of movement; (4) the suspect

4

making a significantly incriminating statement; (5) the presence of multiple officers; and (6) a gun pointing at the suspect.

*State v. Vue*, 797 N.W.2d 5, 11 (Minn. 2011) (quotation omitted). Other factors may indicate that a suspect is not in custody, including:

(1) questioning the suspect in his or her home; (2) law enforcement expressly informing the suspect that he or she is not under arrest; (3) the suspect's leaving the police station without hindrance; (4) the brevity of questioning; (5) the suspect's ability to leave at any time; (6) the existence of a nonthreatening environment; and (7) the suspect's ability to make phone calls.

*Id.* In considering the totality of the circumstances, "no factor alone is determinative." *Thompson*, 788 N.W.2d at 491. "An officer's unarticulated decision not to let the suspect leave at the end of an interrogation, however, has no bearing on the question of whether a suspect was in custody." *Vue*, 797 N.W.2d at 11.

Whether a suspect is in custody and therefore entitled to a *Miranda* warning presents a mixed question of fact and law. *State v. Horst*, 880 N.W.2d 24, 31 (Minn. 2016). An appellate court reviews a district court's findings of fact for clear error, but "review[s] independently the legal conclusion regarding whether the interrogation was custodial." *Id.* As long as the district court applied the proper legal standard, an appellate court will grant "considerable, but not unlimited, deference to the district court's fact-specific resolution of whether the interrogation was custodial." *Id.* (alteration omitted) (quotation omitted).

Heinonen contends that this case is similar to *State v. Rosse*, 478 N.W.2d 482 (Minn. 1991). In *Rosse*, the Minnesota Supreme Court held that a defendant was in custody where the defendant's car was blocked by two police cars, the police approached the defendant

5

with guns drawn, at least seven officers were on the scene, the defendant was pat searched, the police searched the defendant's purse and the interior of her car, the defendant was separated from her companions, though not handcuffed, and the defendant was questioned at length in a squad car. 478 N.W.2d at 486.

*Rosse* is distinguishable. Here, Heinonen's statement identifying himself and his bedroom was made when the officers entered his residence to execute a search warrant. After subduing the dog and handcuffing the three occupants, the officers put their firearms away and told the occupants that they were not under arrest. After 30 to 60 seconds of asking routine questions of each occupant, the officers were able to determine Heinonen's identity, his relationship to the residence, and where he was at the time the officers entered the home. The fact that Heinonen was handcuffed during this questioning does not necessarily mean that he was in custody. *See Walsh*, 495 N.W.2d at 605. ("The handcuffing restraint, by itself, did not mean defendant was in 'custody' for purposes of *Miranda* . . . ."). This is especially true here, where the officers, in executing a search warrant, needed to control the movements of multiple occupants of the house and assess the dangers involved in executing the search warrant. Moreover, the questions asked of Heinonen do not constitute interrogation, but rather amount to "on-the-scene questioning" intended "to get a preliminary explanation of a confusing situation." *Id.* at 604–05.

Under these circumstances, the district court correctly concluded that Heinonen was neither in custody nor subject to interrogation and that the officers' questions were primarily an effort to sort out a confusing situation involving multiple occupants

encountered in different parts of the house. The district court did not err in declining to suppress the statements Heinonen in response to the officers' on-the-scene questioning.

## II.  The district court properly concluded that Heinonen was not interrogated when the officers requested his consent to collect a DNA sample.

Heinonen argues that the officers failed to scrupulously honor his right to remain silent when they requested his consent to collect a DNA sample. Heinonen contends that the officers' "words and actions were the functional equivalent of interrogation for *Miranda* purposes" and that the fruits of that interrogation should be suppressed. We disagree.

There is no dispute that Heinonen unambiguously invoked his right to remain silent and that he was in custody when the officers approached him at the jail. Therefore, the issue is limited to whether the officers' request that Heinonen consent to provide a DNA sample constitutes interrogation. Heinonen argues that the officers should have known that asking for his consent without rereading the *Miranda* warning was reasonably likely to elicit an incriminating response and that therefore the district court should have suppressed Heinonen's statement that he had touched the firearm, as well as the DNA sample he provided.

"When reviewing a district court's pretrial order on a motion to suppress evidence, [appellate courts] review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

### A.  A request that a suspect provide a DNA sample does not constitute interrogation for the purposes of *Miranda*.

7

"[A]n unambiguous and unequivocal invocation of the right to remain silent is required to implicate *Miranda*'s protections. Once implicated, the defendant's right to remain silent must be scrupulously honored and the interrogation must cease." *State v. Day*, 619 N.W.2d 745, 749 (Minn. 2000) (citation and quotations omitted). "Investigating officers violate the accused's right to remain silent when they refuse to stop the interrogation or attempt to wear down the accused's resistance and force a change of mind." *State v. Marshall*, 642 N.W.2d 48, 54 (Minn. App. 2002), *review denied* (Minn. May 28, 2002).

In *Rhode Island v. Innis*, the United States Supreme Court held that the safeguards of *Miranda* apply "whenever a person in custody is subjected to either express questioning or its functional equivalent." 446 U.S. 291, 300–01, 100 S. Ct. 1682, 1689 (1980). The Court explained that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S. Ct. at 1689–90.

We conclude that the officers' request that Heinonen consent to provide a DNA sample did not constitute interrogation under *Miranda*. A request for a DNA sample is merely an attempt to obtain consent for a physical test and does not call for any response other than yes or no. The officers could not have reasonably expected the request for a DNA sample to elicit the incriminating response that Heinonen had touched the firearm.

8

Additionally, asking a suspect to consent to provide a DNA sample is the type of question "normally attendant to arrest and custody" and therefore not interrogational. *Id.* Though Minnesota courts have never determined whether asking for consent to a DNA sample constitutes interrogation, the Minnesota Supreme Court has stated that asking a suspect if he wants to waive extradition does not constitute interrogation "because it is highly unlikely that asking someone whether they want to waive extradition would elicit an incriminating response." *State v. Greenleaf*, 591 N.W.2d 488, 497 (Minn. 1999). Like the question regarding whether a suspect wants to waive extradition, a request that a suspect consent to provide a DNA sample, which can be answered with a yes or no response, is not likely to elicit an incriminating statement.

We note that a number of federal circuit courts have come to the same conclusion regarding requests for consent to search in contexts other than searches of the defendant for DNA.[2] *See United States v. Knope*, 655 F.3d 647, 654 (7th Cir. 2011) (rejecting defendant's argument that consent to search residence was invalid because he signed consent after invoking right to counsel because "a consent to search is not an interrogation

---

[2] We also observe that a number of other state courts have applied *Innis* to requests for consent to provide a DNA sample and have concluded that such requests do not amount to interrogation. *See, e.g.*, *Talley v. State*, 377 S.W.3d 222, 225 (Ark. 2010) ("A request for a DNA sample is neither express questioning in relation to an investigation nor does it constitute words or actions by police that are reasonably likely to elicit an incriminating response."); *Everett v. State*, 893 So.2d 1278, 1286 (Fla. 2004) (concluding that asking for consent to provide DNA sample was not reasonably likely to elicit incriminating response); *People v. McDonald*, 844 N.W.2d 168, 177 (Mich. Ct. App. 2013) ("In this case, the officer's request for a DNA sample . . . were not words that the officer knew or should have known were reasonably likely to elicit the somewhat incriminating response given by defendant.").

within the meaning of *Miranda*" (quotation omitted)); *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1568 (10th Cir. 1993) (concluding that consent to search two vehicles and storage unit was not invalid because it was requested and given after invocation of *Miranda* rights); *United States v. Hidalgo*, 7 F.3d 1566, 1567–68 (11th Cir. 1993) (requesting consent to search residence, curtilage, automobiles, and outbuildings after defendant invoked right to remain silent did not violate defendant's Fifth Amendment rights because "[a] consent to search is not a self-incriminating statement" (quotation omitted)); *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985) (determining that consent to search was not invalid despite *Miranda* violation, stating that "[s]imply put, a consent to search is not an incriminating statement"). Consistent with these other courts, we conclude that the request to consent to a search was not likely to elicit an incriminating response.

**B.     DNA evidence is not testimonial or communicative in nature.**

Furthermore, as provided by the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826 (1966), Fifth Amendment protection does not extend to DNA evidence. In *Schmerber*, a police officer directed a doctor to draw blood from the defendant, who was suspected of driving under the influence of alcohol. 384 U.S. at 758, 86 S. Ct. at 1829. The Supreme Court rejected the defendant's argument that the withdrawal of his blood violated his Fifth Amendment privilege against self-incrimination. *Id.* at 761, 86 S. Ct. at 1830–31. In reaching this conclusion the Supreme Court cited *Holt v. United States*, 218 U.S. 245, 252–53, 31 S. Ct. 2, 6 (1910), for the principle that the "prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him,

10

not an exclusion of his body as evidence when it may be material." *Id.* at 763, 86 S. Ct. at 1832. The Court held that "the [Fifth Amendment] privilege protects an accused only from being compelled to testify against himself, or otherwise provide the [s]tate with evidence of a testimonial or communicative nature." *Id.* at 761, 86 S. Ct. at 1830; *see Hidalgo*, 7 F.3d at 1568 (stating that fruits of search are not evidence of a testimonial or communicative nature).

Because the Fifth Amendment only appertains to evidence of a "testimonial or communicative" nature, the officers' request for a DNA sample did not improperly ask Heinonen to incriminate himself by providing a DNA sample. The district court did not err by failing to suppress the statements and evidence obtained as a result of the officers' request that Heinonen consent to provide a DNA sample.

## D E C I S I O N

We conclude that the district court properly denied Heinonen's motion to suppress because (1) Heinonen was neither in custody nor subject to interrogation when the officers initially questioned him at the scene and (2) even though Heinonen had invoked his rights under *Miranda* to remain silent, his Fifth Amendment rights were not violated by the officers' request that he consent to provide a DNA sample because such request did not constitute interrogation and DNA evidence is not testimonial or communicative in nature.

**Affirmed.**

11