CHUTICH, Justice.
This case requires us to decide whether police officers violated an arrestee's Fifth Amendment right when, after the arrestee invoked his privilege against self-incrimination, the officers later asked him if he was willing to sign a written consent to the taking of a DNA sample and explained to him, when questioned, why they sought the sample. Appellant Erik Heinonen moved to suppress the DNA results, as well as the incriminating statements that he made when officers were taking the DNA sample. The district court denied the motion.
Following a jury trial, Heinonen was convicted of two weapons-related offenses, and the court of appeals affirmed. He contends that the officers conducted a second custodial interrogation of him, and therefore did not scrupulously honor his right to remain silent, by (1) requesting his consent to take a DNA sample and (2) explaining to him, when questioned, why they sought the sample. We conclude that the officers did not violate Heinonen's Fifth Amendment privilege against self-incrimination. Although Heinonen's statements that he had already handled the shotgun were incriminating testimonial communications, none of the officers' actions were reasonably likely to elicit an incriminating testimonial communication. And although the officers' request may have been reasonably likely to prompt a suspect to give consent and provide a DNA sample, neither consenting to give a DNA sample nor providing the sample is an incriminating testimonial communication that triggers the Fifth Amendment privilege against self-incrimination. Accordingly, a warning under Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not required and suppression of evidence is not justified. We therefore affirm.
FACTS
In June 2015, law enforcement officers with the Sherburne County Drug Task Force executed a warrant to search a house in Sherburne County. When the officers entered the home, they found Heinonen and two other occupants. In the closet of an upstairs bedroom, the officers discovered a short-barreled shotgun underneath men's clothing. A plastic case with shotgun shells was sitting on the bed, next to a shoebox. The shoebox contained mail that was addressed to Heinonen at the house being searched. Heinonen, a convicted felon, was not permitted to possess a firearm, and the shotgun's barrel length made it too short for anyone to legally possess in Minnesota.
Investigator Sturm asked Heinonen to come out to a squad car to talk. Sturm read Heinonen the warning required by *588 Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] Heinonen declined to speak with Sturm. Sturm understood that Heinonen was invoking his Fifth Amendment privilege against self-incrimination, and Sturm ended the interrogation. Heinonen did not invoke his right to counsel under the Fifth Amendment.[2] Although Sturm allowed Heinonen to return to the house for a brief time, Heinonen was ultimately arrested and taken to the local jail.
Sturm and his supervisor, Sergeant McLean, approached Heinonen approximately two hours later at the jail. Sturm asked Heinonen if he would sign a written consent to provide a DNA sample. The officers read Heinonen the consent form and then Heinonen signed it. The form contained information about Heinonen's "rights not to have a search made without a search warrant" and his "right to refuse to consent to such a search," but no information regarding Heinonen's privilege against self-incrimination or his right to counsel under the Fifth Amendment. The officers did not reread a Miranda warning.
McLean took the DNA sample from Heinonen using two mouth swabs. While McLean was taking the swabs, Heinonen asked why the officers were taking a DNA sample. McLean replied that they were taking a sample to compare it to DNA found on the shotgun. In response, Heinonen told the officers that "he had already handled the gun." A forensic scientist later determined that Heinonen's DNA profile was consistent with the major male profile developed from the mixture of DNA found in samples taken from the shotgun trigger and slide.
Heinonen was charged with possession of a firearm by an ineligible person and possession of a short-barreled shotgun. See Minn. Stat. § 609.67, subd. 2 (2016) ; § 624.713, subds. 1(2), 2(b) (2016). Before trial, he moved to suppress the DNA evidence and his admission that he had handled the shotgun. According to Heinonen, the officers conducted a second custodial interrogation after he had invoked his privilege against self-incrimination when they asked if he was willing to sign the written consent form and explained to him, when questioned, why they sought the DNA sample. The district court denied the motion. A jury subsequently found Heinonen guilty of both charges.
On appeal, Heinonen renewed his argument that the officers illegally conducted a second custodial interrogation. See State v. Heinonen , 889 N.W.2d 817, 822 (Minn. App. 2017). Relying upon Rhode Island v. Innis , 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the court of appeals disagreed. Heinonen , 889 N.W.2d at 823-24. The court of appeals concluded that the officers could not reasonably have expected that the request for a written consent to take a DNA sample would elicit the incriminating statements that Heinonen made. The court reasoned that (1) the request to search was merely an attempt to obtain consent for a physical test and did not call for any response other than "yes" or "no," and (2) taking a DNA sample was merely a physical test that was not protected by the Fifth Amendment privilege *589 against self-incrimination because providing DNA is not an incriminating testimonial communication. See id. We granted review.
ANALYSIS
The Fifth Amendment guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V ; Malloy v. Hogan , 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (incorporating Fifth Amendment protections as against the states under the Due Process Clause of the Fourteenth Amendment). This privilege against self-incrimination applies only "when the accused is compelled to make a testimonial communication that is incriminating." Fisher v. United States , 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).
Miranda established procedural safeguards "to secure the privilege against self-incrimination" during custodial interrogations. Miranda , 384 U.S. at 444, 467, 86 S.Ct. 1602 ; State v. Tibiatowski , 590 N.W.2d 305, 308-09 (Minn. 1999). Here, no one disputes that Heinonen was in custody when Sturm and McLean approached him to ask for consent to take a DNA sample. The parties do dispute, however, whether that interaction was an interrogation.
An "interrogation" under Miranda refers to (1) "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody)"[3] that (2) "the police should know are reasonably likely to elicit" (3) "an incriminating response from the suspect." Innis , 446 U.S. at 301, 100 S.Ct. 1682 (footnotes omitted); Tibiatowski , 590 N.W.2d at 309 ("In order to rise to the level of interrogation, the questioning, whether express or implied, must be reasonably likely to elicit an incriminating response." (citation omitted) (internal quotation marks omitted) ).[4] To be an interrogation, therefore, police questioning "must reflect a measure of compulsion above and beyond that inherent in custody itself." Innis , 446 U.S. at 300-01, 100 S.Ct. 1682 (explaining that providing a Miranda warning before an interrogation seeks to "vest a suspect in custody with an added measure of protection against coercive police practices").
In analyzing whether a police officer's actions were an interrogation, we consider the totality of circumstances surrounding the police officer's actions to determine whether the actions were reasonably *590 likely to elicit an incriminating response. Tibiatowski , 590 N.W.2d at 311. The likelihood of eliciting an incriminating response is central to the interrogation inquiry. The Supreme Court in Innis explained that, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." 446 U.S. at 301-02, 100 S.Ct. 1682. The analysis of whether a police interaction is an "interrogation" focuses on the perspective of the suspect, not the intent of the police. Id. at 301, 100 S.Ct. 1682.
Heinonen argues that the DNA results and the statements that he made to the police officers should have been suppressed because the officers violated his Fifth Amendment privilege against self-incrimination. But if an incriminating testimonial communication is not foreseeable, or a foreseeable response is not an incriminating testimonial communication that is protected by the Fifth Amendment privilege against self-incrimination, then no Miranda warning is needed and suppression is not warranted. See id. at 301-02, 100 S.Ct. 1682 ; State v. Greenleaf , 591 N.W.2d 488, 497 (Minn. 1999) (holding that questions that are unlikely to elicit incriminating responses do not require Miranda warnings).
Ultimately, the police officers' interaction with Heinonen elicited three responses: (1) he granted written consent for the police to take a DNA sample; (2) he provided the DNA sample; and (3) he made statements about his handling of the shotgun. Because the third response is undoubtedly an incriminating testimonial communication, we begin by asking whether the officers' actions were reasonably likely to elicit an incriminating testimonial communication. We conclude that they were not. And because the officers' conduct may have been reasonably likely to elicit the first two responses, we focus our inquiry on whether consenting to a search or providing a DNA sample are incriminating testimonial communications that trigger the Fifth Amendment privilege against self-incrimination. Again, we conclude that they are not.
Accepting the undisputed facts here, we independently review the district court's determination of whether Heinonen was "interrogated" for Miranda purposes. A mixed question of law and fact requiring independent review is presented when an appellate court reviews a district court's analogous determination that a suspect was not "in custody" for Miranda purposes. State v. Sterling , 834 N.W.2d 162, 167-68 (Minn. 2013). We conclude that this standard applies with equal force to review of a district court's determination of whether a suspect was "interrogated" for Miranda purposes.[5]
I.
Heinonen contends that two separate acts committed by the officers were an interrogation because the acts were reasonably likely to elicit an incriminating response. The first act occurred when officers asked if he would consent to the *591 taking of a DNA sample. The second occurred when officers responded to his query about why they wanted to take his DNA sample. We acknowledge that these acts yielded incriminating testimonial communications from Heinonen, but we conclude that, under the totality of the circumstances here, neither act was an interrogation because neither act was reasonably likely to elicit an incriminating testimonial communication.[6]
According to Heinonen, the act of asking an arrestee if he is willing to consent to the taking of a DNA sample is reasonably likely to elicit an incriminating response. In support, he cites to State v. Zornes , 831 N.W.2d 609, 616 (Minn. 2013). In Zornes , the defendant made potentially incriminating statements when a police officer told him they "were going to utilize a sexual assault kit to take DNA samples from his cheek and penis." Id. But simply because Zornes, a defendant in a different case, made incriminating statements in a similar context does not show that the officers should have known that Heinonen would be reasonably likely to make incriminating statements in response to their asking him if he would sign a written consent to the taking of a DNA sample. After all, the question required only a simple "yes" or "no" response. Moreover, nothing in the record suggests that the request was made in a threatening or accusatory manner.
Viewing the totality of the circumstances, we conclude that the nonaccusatory request for consent to take a DNA sample was not reasonably likely to elicit an incriminating response. See 2 Wayne R. LaFave, et al., Criminal Procedure § 6.7(b), at 857-58 (4th ed. 2015) ("[A] nonaccusatory request that a person consent to a search is likewise not interrogation under the Innis test."). This conclusion is consistent with an analogous decision from our court. In State v. Greenleaf , we held that asking a defendant whether he wanted to waive extradition was not an "interrogation" under Innis . 591 N.W.2d 488, 497 (Minn. 1999). We reasoned that it was "highly unlikely that asking someone whether they want to waive extradition would elicit an incriminating response." Id.
Our conclusion is also consistent with the conclusions of other state supreme courts that have considered this precise issue. In Talley v. State , for example, the Arkansas Supreme Court considered whether the police "continued [an] interrogation for purposes of the Fifth Amendment" by asking a defendant to submit to a DNA test after the defendant had invoked his right to remain silent. 2010 Ark. 357, 377 S.W.3d 222, 224 (2010). The court held that the request was not an interrogation under Miranda because, among other reasons, "a request for DNA is not reasonably likely to elicit incriminating statements, but rather is an effort to obtain consent for a physical test. A police request for DNA does not call for any verbal response aside from a yes or no." Id. at 225 (citation omitted). The Florida Supreme Court reached a similar conclusion in Everett v. Florida , 893 So.2d 1278, 1283 (Fla. 2004) (holding that "[t]he officer's request for appellant's consent to provide DNA biological samples was ... not reasonably likely to elicit an incriminating response").
*592 Next, we consider Heinonen's second contention that the officers engaged in conduct that was reasonably likely to elicit his incriminating statements when they responded to his question asking why the officers wanted to take the DNA sample. Under existing Minnesota law, a police officer may inform an accused of the "evidence marshalled against the defendant." State v. Pilcher , 472 N.W.2d 327, 334 (Minn. 1991). Here, the officer's response to Heinonen's question was factual and accurate: the officers were taking the sample to compare it with a sample from the shotgun. Viewing the totality of the circumstances, we conclude that this honest and straightforward declarative description of the evidence and the officers' purpose was not reasonably likely to elicit an incriminating testimonial communication.[7]
Accordingly, we conclude that although the officers' acts ultimately yielded incriminating testimonial communications from Heinonen, under the totality of the circumstances, neither act was reasonably likely to elicit an incriminating response. See Innis , 446 U.S. at 302, 100 S.Ct. 1682. The officers' actions were therefore not the functional equivalent of a second custodial interrogation and no warning was required under Miranda .
II.
Heinonen also contends that the officers failed to honor his earlier invocation of his Fifth Amendment privilege against self-incrimination by asking him if he would sign a written consent to take a DNA sample. We disagree. We acknowledge that an officer's request for consent to take a DNA sample may be reasonably likely to prompt the suspect to give consent. But the likelihood of a positive response does not matter if the consent to search itself is not an incriminating testimonial communication that triggers the Fifth Amendment privilege against self-incrimination. And here no such communication occurred.
We have never considered whether a defendant is subject to "interrogation" for Miranda purposes when a police officer asks a defendant, who is in custody, if he is willing to consent to a search. Every federal circuit court that has considered the issue, however, has concluded that a Miranda warning is not required because the act of consenting to a search is not an incriminating testimonial communication under the Fifth Amendment.[8] This approach has been described as the "prevailing *593 and better view." 2 Wayne R. LaFave, et al., Criminal Procedure § 3.10(b), at 473 (4th ed. 2015).
We agree with the federal circuit courts that the act of consenting to a search, without more, is not an incriminating testimonial communication under the Fifth Amendment. In Doe v. United States , the United States Supreme Court clarified that "to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988) (citation omitted) (internal quotation marks omitted). In other words, a defendant's communication is only testimonial under the Fifth Amendment when it "disclose[s] any knowledge he might have" or "speak[s] his guilt." Id. at 211, 108 S.Ct. 2341. When Heinonen signed the consent form, he did not disclose information or speak his guilt in any way, so his response was not an incriminating testimonial communication.
Because consenting to a search, by itself, is not an incriminating testimonial communication under the Fifth Amendment, the officers' action of asking Heinonen if he would consent to the taking of a DNA sample did not trigger his Fifth Amendment privilege against self-incrimination, and accordingly no Miranda warning was required.
III.
Heinonen further argues that the police officers violated his Fifth Amendment privilege against self-incrimination when they requested a DNA sample because his written statement of consent, combined with the actual DNA sample that he provided, was an incriminating response. Even if the officers' request for consent to take a DNA sample is reasonably likely to prompt the suspect to provide the sample, providing the physical sample is not an incriminating testimonial communication that triggers the Fifth Amendment privilege against self-incrimination.
"[T]he privilege is a bar against compelling 'communications' or 'testimony,' " but making a suspect or accused "the source of 'real or physical evidence' does not violate it." Schmerber v. California , 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). When Heinonen provided a DNA sample, the act did not disclose any knowledge or speak to his guilt in any way. Providing DNA solely to identify him only made him the source of real or physical evidence, which does not violate the privilege against self-incrimination. See State v. Diamond , 905 N.W.2d 870, 875-76 (Minn. 2018) (reasoning that compelling a defendant to provide a fingerprint was more akin to gathering evidence of a defendant's physical characteristics than eliciting a testimonial communication).
To be sure, providing the DNA sample to police led to incriminating physical evidence-a DNA profile that was consistent with the major male profile developed *594 from the DNA samples taken from the shotgun trigger and slide. This outcome does not undermine our conclusion, however, because the United States Supreme Court has held that when a statement is "not testimonial and for that reason not protected by the privilege [against self-incrimination], it cannot become so because it will lead to incriminating evidence." Doe , 487 U.S. at 208 n.6, 108 S.Ct. 2341 (citation omitted) (internal quotation marks omitted). Consequently, the act of giving a DNA sample does not become an incriminating testimonial communication simply because it ultimately leads to incriminating physical evidence. As long as Heinonen's DNA was only used as a source of physical evidence to identify him, and not for any testimonial or communicative purposes, his act of providing a DNA sample was not an incriminating testimonial communication that triggered the Fifth Amendment privilege against self-incrimination. Accordingly, no Miranda warning was required.[9]
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.

The Supreme Court held in Miranda that before a person in custody may be interrogated, he "must be adequately and effectively apprised of his rights." Miranda , 384 U.S. at 467, 86 S.Ct. 1602. This holding gave rise to what is commonly referred to as a "Miranda warning."

To protect a suspect's constitutional privilege against self-incrimination, a right to counsel arises under the Fifth Amendment when a suspect is interrogated while in custody. Miranda , 384 U.S. at 469, 86 S.Ct. 1602 ; State v. Borg , 806 N.W.2d 535, 545-46 (Minn. 2011).

The record does not provide sufficient information to establish whether the words or actions of the police were those normally attendant to arrest and custody. If the words or actions of the police were merely normally attendant to arrest and custody, our inquiry would end, with no need to determine whether they were reasonably likely to elicit an incriminating response. See Innis , 446 U.S. at 301, 100 S.Ct. 1682.

Heinonen argues that any express questioning, regardless of the likelihood of eliciting an incriminating response, qualifies as interrogation under Miranda unless the question pertains to topics "normally attendant to arrest and custody." Heinonen's argument, however, is inconsistent with the reasoning in Innis and Tibiatowski . Heinonen contends that the Tibiatowski language is mere dicta that we need not follow. Yet when we have expressed an opinion on a question directly involved and argued by counsel, even if that opinion is not entirely necessary to the decision, it "should not be lightly disregarded." State v. Rainer , 258 Minn. 168, 103 N.W.2d 389, 396 (1960). Furthermore, the Tibiatowski opinion does not characterize its ruling on interrogation as superfluous to its ultimate holding. 590 N.W.2d at 311 ("We hold that respondent was not in custody when he made his incriminating statement to Wheeler about his involvement in the crime, nor did Wheeler's question to respondent constitute interrogation. We therefore reverse....").

Other courts have applied this same standard when reviewing a district court's determination about whether a suspect was "interrogated" for Miranda purposes. See, e.g. , Endress v. Dugger , 880 F.2d 1244, 1247-50 (11th Cir. 1989) (explaining that although the district court's subsidiary factual findings are presumed to be correct, an appellate court independently considers whether the findings support a conclusion that the suspect was interrogated); see also Jones v. United States , 779 A.2d 277, 281 (D.C. 2001) (same).

Whether the officer's conduct was reasonably likely to elicit an incriminating response is only part of the inquiry, as we recognized in Tibiatowski , 590 N.W.2d at 310-11. Under Tibiatowski , we must also consider whether the challenged interaction was initiated by law enforcement. Id. Because the police initiated the interaction with Heinonen by seeking him out in jail and then asking him whether he would consent to the taking of a DNA sample, we do not discuss this issue further.

It is true that, as Heinonen asserts, "the officers did not have to immediately respond to Heinonen's question." The police officers could have reminded Heinonen that he had invoked his right to remain silent or provided a fresh set of Miranda warnings. But their decision to answer his question without providing another Miranda warning did not transform their interaction with Heinonen into an interrogation for Miranda purposes.

See United States v. Cooney , 26 Fed. Appx. 513, 523 (6th Cir. 2002) ("The courts that have considered this issue unanimously agree that consenting to a search is not an incriminating statement under the Fifth Amendment because the consent is not evidence of a testimonial or communicative nature."); United States v. Hidalgo , 7 F.3d 1566, 1568 (11th Cir. 1993) ("A consent to search is not a self-incriminating statement." (citation omitted) (internal quotation marks omitted) ); United States v. Rodriguez-Garcia , 983 F.2d 1563, 1568 (10th Cir. 1993) ("Every federal circuit court which has addressed the Miranda issue presented here has reached the conclusion that a consent to search is not an incriminating statement."); United States v. Lewis , 921 F.2d 1294, 1303 (D.C. Cir. 1990) ("Finally, if the judge meant to suggest that an officer must issue a Miranda warning before asking permission to search an individual, every federal circuit court that has addressed the question has reached the opposite conclusion." (citation omitted) (internal quotation marks omitted) ); United States v. Glenna , 878 F.2d 967, 971 (7th Cir. 1989) ("Without belaboring the point, we agree with our fellow courts of appeal."); Cody v. Solem , 755 F.2d 1323, 1330 (8th Cir. 1985) ("Simply put, a consent to search is not an incriminating statement."); Smith v. Wainwright , 581 F.2d 1149, 1152 (5th Cir. 1978) ("A consent to search is not a self-incriminating statement."); United States v. Lemon , 550 F.2d 467, 472 (9th Cir. 1977) ("A consent to search is not the type of incriminating statement toward which the [F]ifth [A]mendment is directed."); United States v. Faruolo , 506 F.2d 490, 495 (2d Cir. 1974) ("There is no possible violation of [F]ifth [A]mendment rights since the consent to search is not 'evidence of a testimonial or communicative nature.' " (quoting Schmerber v. California , 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ) ).

Citing Michigan v. Mosley , 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), Heinonen also contends that even if the request to provide a DNA sample was not interrogation, the DNA was nonetheless obtained in violation of Miranda . Mosley requires that police officers "scrupulously honor" an invocation of the privilege against self-incrimination. Id. at 104, 96 S.Ct. 321. Importantly, Mosley only applies if the suspect makes an incriminating testimonial communication. See id. If there is no incriminating testimonial communication, then the Fifth Amendment privilege against self-incrimination is not triggered. Because we have concluded that neither Heinonen's consent to the search nor his production of the DNA sample was an incriminating testimonial communication, Heinonen's argument fails.